6 A.3d 421

IN THE MATTER OF THE EXPUNGEMENT PETITION OF D.H.

Argued September 14, 2010—Decided October 27, 2010.

*Patricia B. Quelch,* Assistant Prosecutor, argued the cause for appellant State of New Jersey (*Luis A. Valentin,* Monmouth County Prosecutor, attorney; *Ms. Quelch* and *Mary R. Juliano,* Assistant Prosecutor, of counsel; *Ms. Juliano,* on the brief).

*Robert J. Donaher* argued the cause for respondent D.H. (*Walder, Hayden & Brogan,* attorneys).

*Leslie–Ann M. Justus,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

A public official pled guilty to a disorderly persons offense that directly involved or touched the official's public office. As part of her plea agreement, the public official consented to the entry of a statutorily mandated order of forfeiture of public employment, that is, an order whereby the public official forfeited her public employment and was "forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions." *N.J.S.A.* 2C:51–2(d). Several years later, the former public official sought relief under New Jersey's expungement statute, *N.J.S.A.* 2C:52–1 to –32, seeking an order that "such conviction and all records and information pertaining thereto be expunged." *N.J.S.A.* 2C:52–3. As part of that application, the former public official also sought to avoid the effect of the mandatory order of forfeiture of public employment, asserting that, along with her disorderly persons offense conviction, the order of forfeiture of public employment likewise should be expunged. Both the trial court and the Appellate Division concluded that, in the context of a disorderly persons offense, the expungement statute must be read broadly enough to include and also expunge the order of forfeiture of public employment. As a result, the trial court ordered that both the public official's conviction for a disorderly person offense and the concomitant order of forfeiture of public employment be expunged. The Appellate Division affirmed that judgment.

We disagree. Our primary task is to harmonize the provisions of the forfeiture of public employment statute, *N.J.S.A.* 2C:51–2, with those of the expungement statute, *N.J.S.A.* 2C:52–1 to –32. In so doing, we conclude that the provisions of the expungement statute are not intended to override—that is, expunge—a properly entered order of forfeiture of public employment. Stated differently, we conclude that, in the context of an expungement application and in order to give full expression to the Legislature's will, a mandatory order of permanent forfeiture of public employment must be severed from—and preserved from the expungement of—the conviction that originally triggered the order of forfeiture. We therefore affirm so much of the judgment of the Appellate Division that upheld the entry of an expungement order, but reverse that part of the judgment of the Appellate Division that extended the reach of that order to include the order of forfeiture of public employment under appeal, which order of forfeiture is reinstated.

I.

Petitioner D.H. was employed as a detective in the Monmouth County Prosecutor's Office from March 1985 through October 1999. During June 1999, D.H. received a telephone call from an executive at a local employer who asked that D.H. conduct a criminal background check on a prospective employee; D.H. did so, using the Criminal Justice Information System (CJIS), a law enforcement computer system containing, among other things, criminal history records. D.H. well knew she was to make inquiries in CJIS only as part of an active investigation. Although she initially asserted she had her supervisor's permission to do so, she later conceded she had not confirmed that authority in this instance. In the end, D.H. returned the call to the local employer, advising that the person who was the subject of the inquiry indeed had an arrest record.

On July 1, 1999, D.H. was interviewed by representatives of both the Monmouth County Prosecutor's Office and the New

Jersey State Police concerning her unauthorized use of the CJIS. During the interview, D.H. admitted she had conducted CJIS inquiries that were not part of an active criminal investigation, but instead were on behalf of a private employer's internal investigations of its employees.

On September 28, 1999, D.H. was charged with a summons alleging that she had committed the disorderly persons offense of the purposeful and unauthorized access of a computer, in violation of *N.J.S.A.* 2C:20–32.[1] Pursuant to a plea agreement, on October 5, 1999, D.H. pled guilty to that charge and consented to the entry of an order of forfeiture of public employment. Specifically, the trial court inquired of D.H. in respect of the tendered forfeiture order as follows:

> Q. And also with this plea, if the Court accepts this plea, there will be a forfeiture of public office, is that correct? Do you understand that?
>
> A. Yes, I understand that.
>
> Q. And do you understand with that, that means any public office, be [it] a schoolteacher, anything that is labeled as being a public office, you will not be able to participate or take that job, you understand that?
>
> A. Yes, I do.
>
> Q. And [your counsel] has explained that to you as well?
>
> A. Yes, he has.

Before imposing sentence, the trial court explained that, "under [the forfeiture of public employment statute, the imposition of the forfeiture] is not left up to the Court's discretion. The discretion is either with the Prosecutor or the Attorney General." As a

---

[1] As then enacted and in force, that statute provided that "[a] person is guilty of a disorderly persons offense if he purposely and without authorization accesses a computer or any of its parts and this action does not result in the altering, damaging or destruction of any property or services." *See L.* 1984, *c.* 184, § 11 (eff. Mar. 14, 1985). Pursuant to *L.* 2003, *c.* 39, § 8 (eff. Apr. 14, 2003), *N.J.S.A.* 2C:20–32 was repealed; parallel provisions appear under *N.J.S.A.* 2C:20–25(a), as amended pursuant to *L.* 2003, *c.* 39, § 3 (eff. Apr. 14, 2003) ("A person is guilty of computer criminal activity if the person purposely or knowingly and without authorization, or in excess of authorization . . . [a]ccesses any data, data base, computer storage medium, computer program, computer software, computer equipment, computer, computer system or computer network[.]").

result, the trial court was "duty bound" to enter the order of forfeiture of public employment. The trial court, however, accounted for the effect of the required order of forfeiture of public employment in imposing sentence. Noting that it did "have some discretion with [D.H.'s] sentence[,]" the trial court explained that

[a]s I advised you previously, I could impose a sentence of six months [incarceration, a] $1,000 fine, and a period of probation. However, *in light of* your unblemished past, and your public duty and service that you have rendered, *the fact that there is an order of forfeiture* that has been signed by [defense counsel] and [the prosecutor] and I affixed my signature to that, *which forfeits you having any public employment forever, and disqualifie[s you] from holding any office or position of honor, trust, or profit in the State or any of its administrative or political subdivision[s], I am going to sentence you ... to [a total of $110 in costs and penalties].*

For those reasons, the trial court pointedly did not sentence D.H. to any term of incarceration, any term of probation or the imposition of any fines. The contemporaneously entered order of forfeiture of public employment, after reciting that D.H. had consented to the entry of that order, provided that "pursuant to *N.J.S.A.* 2C:51-2, [D.H.] shall forfeit her public employment and shall be forever disqualified from holding any office or position of honor, trust or profit under the State or any of its administrative or political subdivision[s]."

D.H. did not appeal her conviction, sentence or the order of forfeiture of public employment. Instead, on April 12, 2002, D.H. filed a timely petition for post-conviction relief pursuant to *R.* 3:22-1 to -12, seeking to vacate her guilty plea. That petition was heard by the same trial judge who originally accepted D.H.'s plea on October 5, 1999. In a June 13, 2003 unpublished decision, D.H.'s application for relief was denied. D.H. appealed. The Appellate Division noted that "[a]lthough [D.H.] was not alleging ineffective assistance of counsel, she contended that her [July 1, 1999] statement [to representatives of both the Monmouth County Prosecutor's Office and the New Jersey State Police concerning her unauthorized use of the CJIS] should have been suppressed and her plea of guilty vacated." Rejecting the grounds D.H. advanced on appeal, the Appellate Division found itself "in substantial agreement with the comprehensive and well-written elev-

en-page decision of [the trial judge] dated June 13, 2003." It, therefore, affirmed the denial of D.H.'s petition for post-conviction relief.

On July 8, 2008—almost nine years after her conviction—D.H. filed a petition to expunge her conviction. After first determining that D.H. had made out a prima facie case entitling her to the expungement of her conviction and later concluding that the reasons advanced by the State in opposition were insufficient to bar the relief requested, the trial court addressed the effect of the order of forfeiture of public employment.[2] It noted that "[t]he expungement statute nowhere mentions that the expungement should not be granted where an order of disqualification has been entered against the petitioner as a consequence of the offense sought to be expunged, nor has case law determined this specific issue." Relying heavily on the provisions of *N.J.S.A.* 2C:52–32,[3] the trial court described D.H. as a "one time offender" and observed that "the purpose of expungement is the elimination of the collateral consequences of a criminal conviction imposed upon an otherwise law-abiding citizen." (citing *In re Forfeiture of Public Office of Nuñez*, 384 *N.J.Super.* 345, 349, 894 *A.*2d 1176 (App.Div.), *certif. denied*, 187 *N.J.* 491, 901 *A.*2d 954 (2006)). It concluded that "[f]orfeiture and disqualification of public office are collateral consequences of a conviction" that are "eliminated by the order of expungement[.]" The trial court thus entered an order expunging D.H.'s conviction and, reasoning that the forfeiture of public employment was a collateral consequence of that conviction, similarly voiding the forfeiture order.

---

[2] The trial judge who heard D.H.'s expungement petition was not the judge who originally accepted D.H.'s plea and sentenced her thereafter, and who later denied her petition for post-conviction relief.

[3] It provides that the expungement statute "shall be construed with the primary objective of providing relief to the one-time offender who has led a life of rectitude and disassociated himself with unlawful activity, but not to create a system whereby periodic violators of the law or those who associate themselves with criminal activity have a regular means of expunging their police and criminal records."

The State appealed and, in an unpublished opinion, the Appellate Division affirmed. Challenging both the expungement of D.H.'s conviction and the voiding of the order of forfeiture of public employment, the State asserted that expungement was improper because it vitiated the agreed-upon order of forfeiture which remained entitled to its full force and effect independent of the underlying conviction that originally triggered the entry of that order. The Appellate Division rejected those contentions, noting first that "[a] petitioner seeking expungement has the burden of establishing compliance with the provisions of *N.J.S.A.* 2C:52–3." (citing *In re G.R.*, 395 *N.J.Super.* 428, 431, 929 *A.*2d 602 (App.Div.), *certif. denied*, 193 *N.J.* 275, 937 *A.*2d 977 (2007); footnote omitted). It explained that "[i]f the petitioner meets this threshold burden, 'the State has the burden of demonstrating by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted.'" (quoting *ibid.*). The panel reasoned that a "forfeiture order is a mandated consequence of a petitioner's guilty plea and is inseparably tied to the underlying conviction." (citing *In re Nuñez, supra*, 384 *N.J.Super.* at 347, 894 *A.*2d 1176). It explained that "'forfeiture of public employment is a collateral consequence of a criminal conviction, which is eliminated by an order of expungement.'" (quoting *id.* at 349, 894 *A.*2d 1176 (citations, internal quotation marks and editing marks omitted)). It concluded that "[a]lthough *N.J.S.A.* 2C:51–2(d) and the forfeiture order at issue both state that petitioner shall be 'forever disqualified' from public employment, when a petitioner's underlying conviction is expunged, the petitioner is freed from collateral consequences of that conviction, including a forfeiture order." (citing *ibid.*; *N.J.S.A.* 2C:52–27).

The panel then differentiated between those expungement petitioners who were convicted of a crime and those, like D.H., who were convicted of a disorderly persons offense. It noted that "[t]he Legislature has determined that a public employee's record shall not be subject to expungement only when the public employee has been convicted of 'any *crime*' involving or touching the convicted person's public employment." (citing *N.J.S.A.* 2C:52–2(b)

(emphasis added)). Emphasizing that D.H. "was not convicted of a 'crime' but a disorderly person's offense" that involved or touched her public employment, the panel concluded that "*N.J.S.A.* 2C:52–2(b) does not bar expungement in this case."

The Appellate Division also discounted the State's public interest concerns. Stating that "[n]or is this a case where, because of the public interest involved, '[t]he need for the availability of the records outweighs the desirability of having a person freed from any disabilities[,]' " (quoting *N.J.S.A.* 2C:52–14(b)), the panel reasoned that "[t]he public interest is safeguarded by other statutory provisions." It highlighted that "[e]ven after expungement is granted, petitioner is required to divulge information of the expunged offense if she applies for employment in the judiciary or law enforcement." (citing *N.J.S.A.* 2C:52–27(c)). It determined that the State's public interest "concern is abated by a legislative construct that permits expungement while requiring full disclosure." Ultimately concluding that the State had "failed to establish any statutory or other bar to petitioner's expungement, and [that] the judge correctly granted petitioner relief[,]" the Appellate Division affirmed the expungement of both D.H.'s conviction and the order of forfeiture of public employment.[4]

Seemingly narrowing its focus to the question of whether "a public official who secures a favorable plea agreement by consenting to entry of an order permanently disqualifying her from holding public employment [should] be permitted to subsequently avoid enforcement [of] the permanent forfeiture order through expungement[,]" the State petitioned for certification, which was granted.[5] *In re the Expungement Petition of D.H.*, 201 *N.J.* 497,

---

[4] The State sought reconsideration of the Appellate Division's decision, which application was denied.

[5] As presented by the State, the question on certification is far more limited than the issues the State raised before the Appellate Division or as briefed and argued before this Court. Before the Appellate Division, the State had argued that expungement should not have been granted and that, in any event, the

992 *A.*2d 792 (2010). The Attorney General sought and was granted leave to appear as amicus curiae.

## II.

The State advances two principal arguments. In logical order, the State claims, as a threshold matter, that the trial court erred in granting the expungement order regardless of its scope. The State then asserts that even if expungement of D.H.'s conviction was proper, the expungement order cannot encompass the pre-existing forfeiture of public employment order for two separate reasons: the forfeiture order is preserved by the terms of the expungement statute itself, and the forfeiture order must be preserved as a bargained-for, enforceable part of the plea agreement.

Addressing squarely the question presented on certification, amicus the Attorney General echoes the arguments advanced by the State and argues first that voiding a forfeiture of public employment order via an expungement does violence to the forfeiture statute as well as to "longstanding public policy to prohibit individuals who have once betrayed the public trust from having a second opportunity to do so." The Attorney General also urges that the courts below "should have enforced D.H.'s voluntary agreement to permanent disqualification as a condition of her plea."

---

forfeiture of public employment order should not have been subject to expungement. Because the question presented on certification addresses only the question whether a forfeiture order is subject to expungement, the issue of whether expungement of D.H.'s conviction, standing alone, was proper should be deemed abandoned. *See Houseman v. Dare*, 405 *N.J.Super.* 538, 540 n. 1, 966 A.2d 24 (App.Div.2009) (stating claim not pursued on appeal abandoned); *Grubb v. Borough of Hightstown*, 353 *N.J.Super.* 333, 342 n. 1, 802 A.2d 596 (App.Div. 2002) (explaining that issue raised in notice of appeal but not briefed is abandoned). That said, because the State briefed and argued the issue, for the sake of completeness, the question whether, in the circumstances presented, expungement should have been granted nevertheless will be addressed.

Relying on her brief before the Appellate Division, D.H. argues, in order, that she was entitled to relief by way of expungement; that such relief also relieved her of the collateral consequences of conviction, that is, the order of forfeiture of public employment; and that the expungement statute and the forfeiture statute can and should be harmonized to achieve the result she seeks.

### III.

New Jersey's expungement statute expresses a clear, "primary objective of providing relief to the one-time offender who has led a life of rectitude and disassociated himself with unlawful activity[.]" *N.J.S.A.* 2C:52–32. Also, "a central purpose of the expungement statute was to broaden the reliable base of information that will be maintained for law enforcement[,]" thus "requir[ing] merely the extraction and isolation, not the destruction, of expunged records." *State v. XYZ Corp.*, 119 *N.J.* 416, 421, 575 *A.*2d 423 (1990) (citations, internal quotation marks and editing marks omitted). " 'In the last analysis, our role is to effectuate the legislative intent' of the expungement statute." *State v. XYZ Corp.*, 232 *N.J.Super.* 423, 428, 557 *A.*2d 670 (App.Div.1989), *aff'd in part and rev'd in part on other grounds*, 119 *N.J.* 416, 575 *A.*2d 423 (1990) (quoting *State v. A.N.J.*, 98 *N.J.* 421, 428, 487 *A.*2d 324 (1985)).

In setting forth the requirements for expungement relief, the statute differentiates between indictable offenses and disorderly persons offenses. *Compare N.J.S.A.* 2C:52–2 (indictable offenses), *with N.J.S.A.* 2C:52–3 (disorderly persons offenses). In respect of the latter, the expungement statute provides that

> [a]ny person convicted of a disorderly persons offense or petty disorderly persons offense under the laws of this State who has not been convicted of any prior or subsequent crime, whether within this State or any other jurisdiction, or of another three disorderly persons or petty disorderly persons offenses, may, after the expiration of a period of 5 years from the date of his conviction, payment of fine, satisfactory completion of probation or release from incarceration, whichever is later, present a duly verified petition as provided in section 2C:52–7 hereof to the Superior Court in the county in which the conviction was entered praying that such conviction and all records and information pertaining thereto be expunged.

[*N.J.S.A.* 2C:52–3.]

In general, to support a petition for expungement, "[a] petitioner has the burden to satisfy the requirements of the expungement statute[,]" *In re G.R.*, 395 *N.J.Super.*, *supra*, 428, 431, 929 *A.*2d 602 (App.Div.), (citing *In re L.B.*, 369 *N.J.Super.* 354, 363, 848 *A.*2d 899 (Law Div.2004)), by a preponderance of the evidence. *XYZ Corp.*, *supra*, 119 *N.J.* at 423–24, 575 *A.*2d 423. If a petitioner satisfies that burden, the burden then shifts to the State to "demonstrate[ ] by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted." *G.R.*, *supra*, 395 *N.J.Super.* at 431, 929 *A.*2d 602 (citations omitted). If the State fails to satisfy its burden in opposition to the expungement petition, "[t]he petitioner is presumptively entitled to expungement[.]" *Ibid.* (citing *In re J.N.G.*, 244 *N.J.Super.* 605, 610, 583 *A.*2d 364 (App.Div.1990)).

As a matter of practice, then, once a petition for expungement satisfies the requirements of *N.J.S.A.* 2C:52–7 (setting forth required contents of petition) and –8 (describing required statements that must accompany petition), the burden shifts, and

it shall be the obligation of the county prosecutor of the county wherein any petition for expungement is filed to verify the accuracy of the allegations contained in the petition for expungement and to bring to the court's attention any facts which may be a bar to, or which may make inappropriate the granting of, such relief. If no disabling, adverse or relevant information is ascertained other than that as included in the petitioner's affidavit, such facts shall be communicated by the prosecutor to the hearing judge.

[*N.J.S.A.* 2C:52–24.]

A judicial determination that expungement should be granted does not, however, end the inquiry. The expungement statute further requires that

[*u*]*nless otherwise provided by law,* if an order of expungement is granted, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred, and the petitioner may answer any questions relating to their occurrence accordingly, *except as follows:*

a. The fact of an expungement, sealing or similar relief shall be disclosed as provided in section 2C:52–8b.

b. The fact of an expungement of prior charges which were dismissed because of the person's acceptance into and successful completion of a supervisory treatment or other diversion program shall be disclosed by said person to any judge who is determining the propriety of accepting said person into a supervisory treatment or other diversion program for subsequent criminal charges; and

c. Information divulged on expunged records shall be revealed by a petitioner seeking employment within the judicial branch or with a law enforcement or corrections agency and such information shall continue to provide a disability as otherwise provided by law.

[*N.J.S.A.* 2C:52–27 (emphasis supplied).]

It is within this statutory framework that we consider first whether D.H.'s petition for expungement should have been granted.

A.

There is no serious contest either in respect of the sufficiency of D.H.'s petition for expungement or whether she satisfied her prima facie burden: D.H. had been convicted of a disorderly persons offense nine years before she sought expungement of that conviction; D.H. had led a blameless life both before and since then or, in the statute's language, had "not been convicted of any prior or subsequent crime . . . after the expiration of a period of 5 years from the date of [her] conviction[,]" *N.J.S.A.* 2C:52–3; and her petition for expungement satisfied all of the statutory requirements. In those circumstances, the burden then shifted to the State to demonstrate, by a preponderance of the evidence, a basis cognizable under the expungement statute to deny that relief. Those grounds generally are as follows:

A petition for expungement filed pursuant to this chapter shall be denied when:

a. Any statutory prerequisite, including any provision of this chapter, is not fulfilled or there is any other statutory basis for denying relief.

b. The need for the availability of the records outweighs the desirability of having a person freed from any disabilities as otherwise provided in this chapter. An application may be denied under this subsection only following objection of a party given notice pursuant to 2C:52–10 and the burden of asserting such grounds shall be on the objector, except that in regard to expungement sought for third or fourth degree drug offenses pursuant to paragraph (3) of subsection c. of N.J.S. 2C:52–2, the court shall consider whether this factor applies regardless of whether any party objects on this basis.

c.  In connection with a petition under section 2C:52–6, the acquittal, discharge or dismissal of charges resulted from a plea bargaining agreement involving the conviction of other charges.  This bar, however, shall not apply once the conviction is itself expunged.

d.  The arrest or conviction sought to be expunged is, at the time of hearing, the subject matter of civil litigation between the petitioner or his legal representative and the State, any governmental entity thereof or any State agency and the representatives or employees of any such body.

e.  A person has had a previous criminal conviction expunged regardless of the lapse of time between the prior expungement, or sealing under prior law, and the present petition.  This provision shall not apply:

(1) When the person is seeking the expungement of a municipal ordinance violation or,

(2) When the person is seeking the expungement of records pursuant to section 2C:52–6.

f.  The person seeking the relief of expungement of a conviction for a disorderly persons, petty disorderly persons, or criminal offense has prior to or subsequent to said conviction been granted the dismissal of criminal charges following completion of a supervisory treatment or other diversion program.

[*N.J.S.A.* 2C:52–14.]

Referencing subsection (b) of that statutory provision, *N.J.S.A.* 2C:52–14(b), the State asserted that, because D.H. also was subject to an order of forfeiture of public employment as part of her disorderly persons conviction, the expungement petition should be denied.  In other words, the State asserted that "the need for the availability of these records [of conviction and forfeiture of public office] outweighs the desirability of freeing [D.H.] from the disabilities of her sentence and the collateral consequences."  Reduced to its core concern, the State objected to D.H.'s petition for expungement for one distinct reason:  because "[e]xpungement of [D.H.]'s disorderly persons offense would relieve her from the effect of the *N.J.S.A.* 2C:51–2 order [of forfeiture of public employment]."

In advancing that argument, the State conflates two separate and distinct statutory provisions—expungement and forfeiture of public employment—asserting that the continued vitality of the latter trumps the availability of the former.  We do not agree.  The question of whether expungement should be granted is different in both form and substance from the separate but related

question as to the reach of any resulting order of expungement. In this respect, *N.J.S.A.* 2C:52–15 specifically provides that "[i]f an order of expungement of records of arrest or conviction under this chapter is granted by the court, all the records *specified in said order* shall be removed[.]" (emphasis supplied). The Legislature therefore foresaw instances where expungement could be granted but, in the exercise of legislatively guided judicial discretion, something less than all of the records resulting from the petitioner's arrest and conviction would be subject to the expungement order.

That limitation applies here. D.H.'s petition for expungement of her disorderly persons offense conviction satisfied all of the statutory requirements and the State failed to prove, by a preponderance of the evidence, that expungement should not be granted. In those circumstances, the entry of the order of expungement was proper and, to that extent, is affirmed.

That said, we nevertheless must address the reach of the expungement order to determine whether it should have encompassed the pre-existing forfeiture of public employment order or was severable therefrom. That issue draws into sharp relief the principal point of contention in this appeal: whether the expungement statute and the forfeiture of public employment statute can be harmonized so that an order of expungement need not automatically result in voiding an otherwise properly entered order of forfeiture of public employment.

### B.

As relevant to this appeal, the forfeiture of public employment statute clearly provides that

> *[a] person holding any public* office, position, or *employment,* elective or appointive, under the government of this State or any agency or political subdivision thereof, *who is convicted of an offense shall forfeit such office, position or employment if ... [she] is convicted of an offense involving or touching such* office, position or *employment* [.]

[*N.J.S.A.* 2C:51–2(a)(2) (emphasis supplied).]

When a committed offense "involves or touches" the offender's public office, position or employment—that is, if "the offense was related directly to the person's performance in, or circumstances flowing from, the specific public office, position or employment held by the person[,]" *N.J.S.A.* 2C:51–2(d); *see also State v. Hupka*, 203 *N.J.* 222, 233, 1 *A.*3d 640 (2010) (explaining that "the disqualification provision was intended to be contingent on a conclusion that the conviction was related, directly and specifically, to the position held")—the result is both mandatory and bleak:

In addition to the punishment prescribed for the offense, and the forfeiture set forth in subsection a. of N.J.S. 2C:51–2, any person convicted of an offense involving or touching on his public office, position or employment *shall be forever disqualified* from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions.

[*Ibid.* (emphasis supplied).]

That D.H.'s conviction for the disorderly persons offense of the purposeful and unauthorized access of a computer "involved and touched" her employment as a detective with the Monmouth County Prosecutor's Office is not and never has been in dispute; it was in recognition thereof that D.H. originally consented to the entry of the order of forfeiture of public employment which, tracking the words of the forfeiture of public employment statute, ordered that D.H. "shall forfeit her public employment and shall be forever disqualified from holding any office or position of honor, trust or profit under the State or any of its administrative or political subdivision[s]."

The issue, then, is plainly stated: does an expungement order automatically expunge an order of forfeiture of public employment, or may those separate statutory provisions be read harmoniously and applied in unison to achieve their respective and facially contradictory goals?

The Appellate Division addressed that question in a case that did *not* involve an offense that "involved and touched" the petitioner's public employment and, hence, was not subject to a statutorily mandated forfeiture of public employment. *In re Nuñez, supra*, 384 *N.J.Super.* at 350, 894 *A.*2d 1176. Stating expansively that

"[o]ur courts have recognized that the purpose of expungement is the 'elimination of the collateral consequences of a criminal conviction imposed upon an otherwise law-abiding citizen[,]' " *id.* at 349, 894 *A.*2d 1176 (quoting *In re T.P.D.,* 314 *N.J.Super.* 643, 648, 715 *A.*2d 1048 (Law Div.1997), *aff'd o.b.,* 314 *N.J.Super.* 535, 715 *A.*2d 994 (App.Div.1998) (editing marks omitted)), the Appellate Division nevertheless acknowledged that "neither the statutes governing expungement nor those governing the forfeiture of public office or employment specifically address the effect of an expungement of a conviction upon a forfeiture of public office or employment[.]" *Ibid.* Despite that reservation, the Appellate Division "conclude[d] that forfeiture of public employment is a 'collateral consequence' of a criminal conviction . . . which is eliminated by an order of expungement." *Ibid.* (citation and internal editing marks omitted). It reasoned that *"N.J.S.A.* 2C:52–27 describes the consequences of expungement in expansive terms, providing that an expunged 'conviction and any proceedings related thereto shall be deemed not to have occurred[.]' " *Ibid.* Given that analysis, the Appellate Division held that "a criminal conviction that the Legislature has directed 'shall be deemed not to have occurred' cannot provide a foundation for a forfeiture of public office or employment under *N.J.S.A.* 2C:51–2(a)." *Id.* at 349–50, 894 *A.*2d 1176.

To the extent that D.H.'s conviction of a disorderly persons offense "involved and touched" her public employment and required the entry of a mandatory order of forfeiture of public employment, we reject *In re Nuñez*'s logic, reasoning and result.[6] In those at first blush contradictory instances where an order of forfeiture of public employment is mandatory but the remedy of expungement remains available, we are required to give full meaning to the Legislature's mandate. In that respect, our courts

---

[6] In the context of crimes—and not, as here, a disorderly persons offense—we previously have made clear that "a public official who commits a crime involving or touching his office is not eligible for expungement of the record of his conviction by the express language of the third paragraph of *N.J.S.A.* 2C:52–2[ (]b[) ]." *In re P.A.F.,* 176 *N.J.* 218, 219, 822 *A.*2d 572 (2003).

consistently have recognized that *N.J.S.A.* 2C:51–2 embodies "a reasonable governmental objective to preclude those who have once violated the public trust from a second opportunity." *State v. Musto,* 187 *N.J.Super.* 264, 314, 454 *A.*2d 449 (Law Div.1982), *aff'd,* 188 *N.J.Super.* 106, 456 *A.*2d 114 (App.Div.1983). *Accord Cicchetti v. Morris County Sheriff's Office,* 194 *N.J.* 563, 583, 947 *A.*2d 626 (2008) (explaining that forfeiture of public employment statute "is designed to preclude those who have once violated the public trust from having a second opportunity, and that it operates to prevent [those disqualified] officials from again holding office") (citations, internal quotation marks and editing marks omitted); *Cedeño v. Montclair State Univ.,* 163 *N.J.* 473, 477, 750 *A.*2d 73 (2000) (stating that "[t]he legislative intent of the Forfeiture Statute is to preclude those who have once violated the public trust from having a second opportunity") (citations, internal quotation marks and editing marks omitted); *McCann v. Clerk, City of Jersey City,* 338 *N.J.Super.* 509, 517, 770 *A.*2d 723 (App.Div.2001), *aff'd,* 167 *N.J.* 311, 771 *A.*2d 1123 (2001), 168 *N.J.* 285, 773 *A.*2d 1151 (2001) (quoting *Cedeño, supra,* 163 *N.J.* at 477, 750 *A.*2d 73); *Pastore v. County of Essex,* 237 *N.J.Super.* 371, 377, 568 *A.*2d 81 (App.Div.1989), *certif. denied,* 122 *N.J.* 129, 584 *A.*2d 205 (1990) (quoting *Musto, supra,* 187 *N.J.Super.* at 314, 454 *A.*2d 449). Within this context, we must seek to harmonize what appear to be superficially disparate statutory provisions. We achieve that harmony both through a stated exception to the expungement statute, and via the Legislature's foresight in providing an appropriately elastic remedy.

Again, when a person is convicted of an offense that "involves and touches" upon that person's public office, the obligatory forfeiture of public employment provisions of *N.J.S.A.* 2C:51–2(d) are triggered. That, on its face, is a result "otherwise provided by law" that is exempt from the reach of the expungement statute. *See N.J.S.A.* 2C:52–27 (providing that *"[u]nless otherwise provided by law,* if an order of expungement is granted, the arrest, conviction and any proceedings related thereto

shall be deemed not to have occurred, and the petitioner may answer any questions relating to their occurrence accordingly" and listing additional exceptions for required disclosure of expunged convictions: (1) in any subsequent expungement petition, (2) in connection with admission "into a supervisory treatment or other diversion program for subsequent criminal charges[,]" and (3) in connection with "seeking employment within the judicial branch or with a law enforcement or corrections agency" (emphasis supplied)).[7] Under that reasoning and closely following the terms of the expungement statute itself, the entry of an order of expungement should have no effect—either direct, collateral or preclusive—on a separate mandatory order of forfeiture of public employment.

We so conclude because finding this common ground between the expungement statute and the forfeiture of public employment statute gives full expression to the policies underlying both: it allows for "providing relief to the one-time offender who has led a life of rectitude and disassociated himself with unlawful activity," *N.J.S.A.* 2C:52–32, while insuring that "any person convicted of an offense involving or touching on his public office, position or employment shall be *forever disqualified* from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions[,]" *N.J.S.A.* 2C:51–2(d) (emphasis supplied).

Further, the conclusion that an order of expungement does not automatically void a mandatory order of forfeiture of public employment also is consistent with the Legislature's adoption of what

[7] To the extent D.H. argues that the phrase "[u]nless otherwise provided by law" must be read restrictively, limited only to the three exceptions expressly set forth in *N.J.S.A.* 2C:52–27, we decline to do so. Such a reading would render that statute's introductory qualifying phrase surplusage, a result we are duty bound to avoid. *In re Attorney Gen.'s "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Groups"*, 200 *N.J.* 283, 297–98, 981 A.2d 64 (2009) ("We must presume that every word in a statute has meaning and is not mere surplusage, and therefore we must give those words effect and not render them a nullity.").

aptly has been termed "relief valve" legislation. Addressing the seemingly harsh nature of the mandatory forfeiture of public employment in disorderly persons offenses that "involve and touch" a public office, this Court has noted that

[a]lthough the statute might seem somewhat draconian, the Legislature created a "relief valve" in 1988 by adding subsection "e" to *N.J.S.A.* 2C:51-2, which states that "[a]ny forfeiture or disqualification ... which is based upon a conviction of a disorderly persons or petty disorderly persons offense may be waived by the court upon application of the county prosecutor or the Attorney General and for good cause shown." *N.J.S.A.* 2C:51-2e. The intended purpose of that subsection was to ameliorate the harshness of the forfeiture provision in practical application.

[*Flagg v. Essex County Prosecutor*, 171 *N.J.* 561, 569, 796 *A.*2d 182 (2002) (citation and internal quotation marks omitted).]

Thus, although an order of expungement will not relieve a disqualification from public employment resulting from a mandatory order of forfeiture of public employment, the Legislature in fact has provided a separate and specific means to that remedy: an application for relief under *N.J.S.A.* 2C:51-2(e). Given the existence of that statutorily provided "relief valve," it is both inappropriate and unnecessary to expand judicially the reach of the expungement statute to also cover mandatory orders of forfeiture of public employment.[8]

## IV.

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded to the Law Division for the entry of an order expunging D.H.'s conviction but reinstating and retaining unaffected the mandatory order of forfeiture of public employment.

Justice LONG, concurring in part and dissenting in part.

I am in full agreement with the majority's determination that the trial judge's grant of an expungement order to D.H. was

---

[8] Because the result reached reinstates the order of forfeiture of public employment that binds D.H., we need not reach the State's additional argument that the forfeiture order must be preserved as a bargained-for and enforceable term of the plea agreement.

proper. I part company from my colleagues in connection with their concomitant ruling that the order of forfeiture of public employment survived the expungement.

Like the trial judge, I conclude that "[f]orfeiture and disqualification of public office are collateral consequences of a conviction" that are "eliminated by the order of expungement[.]" Moreover, as the Appellate Division panel explained: "[a]lthough *N.J.S.A.* 2C:51–2(d) and the forfeiture order at issue both state that petitioner shall be 'forever disqualified' from public employment, when a petitioner's underlying conviction is expunged, the petitioner is freed from collateral consequences of that conviction, including a forfeiture order." *See N.J.S.A.* 2C:52–27; *In re Forfeiture of Public Office of Nunez*, 384 *N.J.Super.* 345, 349–50, 894 *A.*2d 1176 (App.Div.), *certif. denied*, 187 *N.J.* 491, 901 *A.*2d 954 (2006).

For me, that reasoning is unassailable when viewed in light of the language of the relevant enactments. The forfeiture statute states:

> In addition to the punishment prescribed for the offense, and the forfeiture set forth in subsection a. of N.J.S. 2C:51–2, *any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding any office or position* of honor, trust or profit under this State or any of its administrative or political subdivisions.
>
> [*N.J.S.A.* 2C:51–2(d) (emphasis added).]

Like the courts below, I read that language to mean what it says: that the forfeiture of office attaches to the conviction.

The expungement statute, *N.J.S.A.* 2C:52–27, in turn, prescribes in relevant part:

> Unless otherwise provided by law, if an order of expungement is granted, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred, and the petitioner may answer any questions relating to their occurrence accordingly, except as follows:
>
> a. The fact of an expungement, sealing or similar relief shall be disclosed as provided in section 2C:52–8b [where a party is seeking expungement of a criminal conviction they must disclose previous expungements];
>
> b. The fact of an expungement of prior charges which were dismissed because of the person's acceptance into and successful completion of a supervisory treatment or other diversion program shall be disclosed by said person to any judge

who is determining the propriety of accepting said person into a supervisory treatment or other diversion program for subsequent criminal charges; and

c. Information divulged on expunged records shall be revealed by a petitioner seeking employment within the judicial branch or with a law enforcement or corrections agency and such information shall continue to provide a disability as otherwise provided by law.

[*N.J.S.A.* 2C:52–27 (emphasis added).]

Further, expungement is not available at all in certain circumstances:

b. Records of conviction pursuant to statutes repealed by this Code for the crimes of murder, manslaughter, treason, anarchy, kidnapping, rape, forcible sodomy, arson, perjury, false swearing, robbery, embracery, or a conspiracy or any attempt to commit any of the foregoing, or aiding, assisting or concealing persons accused of the foregoing crimes, shall not be expunged.

Records of conviction for the following crimes specified in the New Jersey Code of Criminal Justice shall not be subject to expungement: Section 2C:11–1 et seq. (Criminal Homicide), except death by auto as specified in section 2C:11–5; section 2C:13–1 (Kidnapping); section 2C:13–6 (Luring or Enticing); section 2C:14–2 (Aggravated Sexual Assault); section 2C:14–3a (Aggravated Criminal Sexual Contact); if the victim is a minor, section 2C:14–3b (Criminal Sexual Contact); if the victim is a minor and the offender is not the parent of the victim, section 2C:13–2 (Criminal Restraint) or section 2C:13–3 (False Imprisonment); section 2C:15–1 (Robbery); section 2C:17–1 (Arson and Related Offenses); section 2C:24–4a. (Endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of the child); section 2C:24–4b(4) (Endangering the welfare of a child); section 2C:28–1 (Perjury); section 2C:28–2 (False Swearing) and conspiracies or attempts to commit such crimes.

Records of conviction for any crime committed by a person holding any public office, position or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof and any conspiracy or attempt to commit such a crime shall not be subject to expungement if the crime involved or touched such office, position or employment.

c. In the case of conviction for the sale or distribution of a controlled dangerous substance or possession thereof with intent to sell, expungement shall be denied except where the crimes relate to:

(1) Marijuana, where the total quantity sold, distributed or possessed with intent to sell was 25 grams or less, or

(2) Hashish, where the total quantity sold, distributed or possessed with intent to sell was five grams or less.

[*N.J.S.A.* 2C:52–2(b) and (c).]

Reduced to its basic elements, that statutory scheme sets forth which convictions can be expunged, explains the effect of expungement, and permits the party to an expungement to answer ques-

tions about his criminal record as if the conviction never occurred, with the noted exceptions.

When the forfeiture statute and the expungement statute are read together, the result is clear: forfeiture attaches to the conviction and when the conviction is "deemed not to have occurred," the forfeiture falls of its own weight. The majority's contrary holding, based on the notion that "[u]nless otherwise provided by law" somehow permits the forfeiture to survive the expungement, is an overly-broad reading of that language which, in my view, waters down the Legislature's clearly expressed intention that the expunged conviction be treated as if it never took place. I read "[u]nless otherwise provided by law" as a reference to specific statutory exceptions, beyond those in *N.J.S.A.* 2C:52–27, which require the revelation of criminal records despite expungement. *See, e.g., N.J.S.A.* 2C:52–21 (use of expunged records in conjunction with setting bail or sentencing), *N.J.S.A.* 2C:52–22 (use of expunged records by parole board).

That is not to suggest that the "forever disqualified" language in *N.J.S.A.* 2C:51–2(d) has no meaning. Indeed, by precluding expungement for specific crimes, *N.J.S.A.* 2C:52–2(b) and (c), the Legislature assured forfeiture "forever" because defendants will remain convicted of those crimes. To the contrary, by permitting expungement of offenses like the one involved in this case, the Legislature expressly opened the door for the lifting of the collateral consequence of forfeiture. *See N.J.S.A.* 2C:52–3.

For those reasons, I respectfully dissent.

*For affirmance in part; reversal in part*—Chief Justice RABNER, Justices LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS—5.

*For concurrence in part; dissent in part*—Justice LONG—1.

*Not participating*—Judge STERN.