# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
NO. A-3555-19

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL RECORDS OF
S.M.U.

_____

Argued May 26, 2021 – Decided June 17, 2021

Before Judges Whipple and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. M-869-19.

Allan Marain argued the cause for appellant S.M.U. (Law Offices of Allan Marain, attorneys; Allan Marain, on the briefs).

Joie D. Piderit, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Joie D. Piderit, of counsel and on the brief).

PER CURIAM

Petitioner appeals from an April 9, 2020 Law Division order denying expungement of his criminal records. The judge found petitioner's conviction

was presumptively eligible for expungement but denied the application because the need for the availability of the records outweighed the need for expungement under N.J.S.A. 2C:52-14(b). We affirm.

Petitioner raises the following arguments on appeal:

> POINT ONE: PETITIONER'S SATISFACTION OF ALL [N.J.S.A.] 2C:52-2 REQUIREMENTS MADE HIS RECORDS PRESUMPTIVELY ELIGIBLE FOR EXPUNCTION
>
> POINT TWO: THE [TRIAL COURT] IMPROPERLY SHIFTED THE BURDEN OF PROOF (not raised below)
>
> POINT THREE: THE [TRIAL COURT] NEVER CONDUCTED THE WEIGHING PROCESS THAT [N.J.S.A.] 2C:52-14(b) REQUIRED
>
> POINT FOUR: THE [TRIAL COURT] DISREGARDED THE LEGISLATIVE MANDATE CONCERNING CONSTRUCTION OF CHAPTER 52

Petitioner's charges stem from a 2007 incident when he worked at Robert Wood Johnson University Hospital (RWJUH) in the emergency department, where he would transport patients. A female patient, C.G.,[1] was admitted to the emergency department after an apparent suicide attempt wherein she drank three bottles of wine and ingested a bottle of Seroquel, arriving at RWJUH "semi-conscious."

---

[1] We use initials to protect the identity of the victim. R. 1:38-3(c)(12).

2

Petitioner stated to the police that he "wheeled" C.G. into the emergency room from her car. He was with her while she was treated by the triage nurse, who classified her as emergent due to her condition. Then, he moved C.G. to a separated area of the emergency department and closed the curtain. He indicated that while C.G. was under his care, he kissed her lips, touched her breasts, kissed her breasts, and inserted the tip of his finger into her vagina. And at one point during the police interview, petitioner described C.G. as "[n]ot in the right state of mind."

Petitioner was arrested during an attempt to meet C.G. a second time, outside of the hospital, and he was charged with sexual assault for the incident in the hospital, N.J.S.A. 2C:14-2(a)(7). A grand jury indicted him for fourth-degree criminal sexual contact, contrary to N.J.S.A. 2C:14-3(b), on June 22, 2007. Petitioner pleaded guilty to fourth-degree criminal sexual contact and was sentenced to five years' probation on August 17, 2007. He filed a petition for expungement on November 6, 2019, supported by a psychological evaluation prepared by Philip Witt, Ph.D. After considering petitioner's submission and the State's response, Judge Robert J. Jones, Jr. denied the petition on April 9, 2020.

A-3555-19

The Witt report offered the opinion that petitioner "is unlikely to present a danger to the community. The isolated nature of his offense, combined with his stable mature adjustment during the past [thirteen] years support this opinion." Also found in the presentence report, and Dr. Witt's report, was information that petitioner had graduated from Rutgers University and pursued coursework that would allow him to attend medical school. Petitioner had also volunteered at a rescue squad as a certified emergency medical technician (EMT). He never completed medical school, and according to his attorney, abandoned any plan to become a doctor. An updated report from Dr. Witt indicates petitioner currently manages clinical research projects and is proud that he has done well in his job. He is married and owns a three-family home, where he lives in one unit and rents the others.

Individuals who apply for expungement have an initial burden to satisfy the requirements of the expungement statute by a preponderance of the evidence. In re D.H., 204 N.J. 7, 18 (2010). Petitioners must present a verified petition and certain accompanying statements. See generally N.J.S.A. 2C:52-7 to -8. Once petitioners satisfy their burden, the burden "shifts to the State to 'demonstrate[] by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted.'" D.H., 204 N.J. at 18

4

(alteration in original) (quoting In re G.R., 395 N.J. Super. 428, 431 (App. Div. 2007)). Section 14 of the statute outlines grounds for the denial of an expungement petition. N.J.S.A. 2C:52-14. Those grounds include the following: if "[a]ny statutory prerequisite . . . is not fulfilled or there is any other statutory basis for denying relief," id. at (a); and if "[t]he need for the availability of the records outweighs the desirability of having a person freed from any disabilities as otherwise provided in" the statute, id. at (b). If the State does not meet its burden, the petitioner is presumptively entitled to expungement. D.H., 204 N.J. at 18; In re Expungement of the Crim. Record Belonging to T.O., 244 N.J. 514, 524-25 (2021). Here, the court found petitioner was presumptively eligible, so the burden shifted to the State.

The State objected to expungement, arguing that employers in the community, more specifically the medical community, should know what petitioner did. It argued petitioner had wanted to become a doctor, that he abused a position of trust, and that medical institutions and similar institutions should be able to know about his crime if he applies for jobs. According to the State, the need to make his criminal history records available outweighs the desirability of an expungement because of petitioner's lifelong interest in a medical profession. The State also argued that medical employers, who might

hire petitioner for a position in patient care, should be able to consider his breach of trust when deciding whether to hire him. The court agreed and determined the State had met its burden of showing by a preponderance of evidence that the need to keep petitioner's conviction records available outweighs the desirability to have him free from disabilities created by his conviction. The court entered an order denying the petition on April 9, 2020. Judge Jones stated:

> The Legislature recognizes the special role healthcare providers play in people's lives. For example, healthcare professionals, including doctors, dentists, nurses, therapists, pharmacists, and a host of others, must undergo criminal background checks. N.J.S.A. 45:1-28 to 1-29. Even those only assisting in patient care are required to undergo these checks. See N.J.S.A. 26:2H-83 ([nurses' aides], personal care assistants); N.J.S.A. 45:11-24.3 (home health aides). When people receive healthcare, they place themselves in vulnerable positions - and they trust the caregiver will not take advantage of that vulnerability.
>
> [Petitioner] took advantage of someone while working at a hospital. He's expressed a lifelong interest in healthcare, and he even attended medical school to become a doctor, albeit unsuccessfully. He volunteered for a rescue squad as an EMT before committing the crime for which he seeks an expungement, and even his current career managing clinical research projects derives from his interest in science and medicine.

6

Yes, [petitioner's] attorney says he no longer plans to become a doctor. But given his career choice nothing stops him from applying for positions that involve patient care or patient contact.

. . . .

It comes down to this: [w]hen I weigh the arguments, I find that the State has met its burden. That is, the State has proven by a preponderance of the evidence that the need to make [petitioner's] criminal-sexual-contact-conviction records available outweighs the desirability of having him freed from any disabilities created by that conviction. His application is denied.

This appeal followed.

We have considered petitioner's contentions in light of the record and applicable law. We discern no abuse in the exercise of the court's discretion. We are convinced petitioner's substantive claims were fully and correctly addressed for the reasons given by the judge and require no further discourse. R. 2:11-3(e)(1)(E).

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7