# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1558-24

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL/JUVENILE
RECORDS OF P.C.[1]

_____

Argued January 13, 2026 – Decided June 11, 2026

Before Judges Sumners and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. XP-24-004555.

Jennifer A. Gisi, Assistant Deputy Public Defender, argued the cause for appellant P.C. (Jennifer N. Sellitti, Public Defender, attorney; Jennifer A. Gisi and Jonathan Edward Ingram, of counsel and on the briefs).

Maura M. Sullivan, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Grace C. MacAulay, Camden County Prosecutor, attorney; Maura M. Sullivan, of counsel and on the brief).

PER CURIAM

_____

[1] We use initials to protect the confidentiality of the proceedings in accordance with Rule 1:38-3(c)(9) and (11).  Including petitioner's name in this opinion would defeat the purpose of expungement, should they refile for relief as their applications were dismissed without prejudice.  See R. 1:38-3(c)(7).

Petitioner P.C. appeals from a January 21, 2025 order denying his petition to expunge his criminal conviction. Having reviewed the record and governing law, we affirm.

I.

We have gleaned the undisputed facts from the record. In 1991, petitioner was arrested and later indicted for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and second-degree sexual assault of a ten-year-old victim, who petitioner was more than four years older, N.J.S.A. 2C:14-2(b). The sexual assault occurred while petitioner was caring for the child who was home sick. In 1992, petitioner pled guilty to first-degree aggravated sexual assault and was later sentenced to a five-year term of probation.

Megan's Law had not yet been enacted at the time of petitioner's sentencing. However, because he was actively serving his sentence when it was enacted, Megan's Law was retroactively applied to him. Petitioner was not subject to Parole Supervision for Life (PSL).

In 2005, petitioner was indicted for fourth-degree failure to register as a sex offender—failure to verify address, N.J.S.A. 2C:7-2(e), and fourth-degree registration of sex offender—notice of change of address, N.J.S.A. 2C:7-2(d). In November 2005, petitioner pled guilty to fourth-degree failure to register—

A-1558-24

notice of change of address and was sentenced to a two-year term of probation. In 2006, petitioner was found guilty of a violation of probation and was sentenced to continued probation.

Petitioner had other charges on his record that did not result in convictions. In 1990, he was charged with: (1) theft by unlawful taking/disposition of movable property, N.J.S.A. 2C:20-3(a); (2) criminal mischief, N.J.S.A. 2C:17-3(a)(1); and (3) two counts of assuming a false identity, N.J.S.A. 2C:21-17(1)—all of which were downgraded to municipal court. In 1992, petitioner was charged with fourth-degree sexual contact, N.J.S.A. 2C:14-3(b), and a petty disorderly persons offense of harassment, N.J.S.A. 2C:33-4. The State moved to dismiss both charges. In 2005, petitioner was charged with harassment, which was later dismissed. Since his 2005 conviction, petitioner has remained offense-free.

On July 29, 2024, petitioner filed an application to expunge his 2005 conviction for failure to register/failure to notify of address change. Although the State did not dispute that petitioner met the initial expungement requirements, it objected to the relief, arguing, in part, that under N.J.S.A. 2C:52-14(b), the need for the availability of petitioner's criminal history records

outweighed the desirability of petitioner being freed from the disability of his conviction.

The trial court found that petitioner was presumptively eligible to have his failure to register as a sex offender-change of address, failure to register as a sex offender-verify address, and harassment convictions expunged. However, the court denied expungement under N.J.S.A. 2C:52-14(b), ruling that the need for the State and the court to access petitioner's records relating to his failure to register convictions outweighed the benefits of expungement. The court dismissed the petition without prejudice. This appeal followed.

Petitioner presents two arguments for our consideration. First, he contends the trial court erred by imposing a categorical bar to expungement relief on all persons subject to Megan's Law under N.J.S.A. 2C:52-14(b), instead of conducting a particularized analysis, and that the trial court improperly shifted the burden to petitioner. Second, he asserts the court abused its discretion in denying expungement relief without requiring the State to identify particularized facts to justify denying expungement.

4

II.

We review issues of law and statutory construction de novo. N.J. Div. of Child Prot. & Permanency v. A.P., 258 N.J. 266, 278 (2024). Because N.J.S.A. 2C:52-14(b) requires a case-by-case "qualitative assessment of the public and private interests at stake," In re Petition for Expungement of Crim. Rec. Belonging to T.O., 244 N.J. 514, 536 (2021), some degree of judicial discretion is involved in determining whether "[t]he need for the availability of the records outweighs the desirability of having a person freed from any disabilities," id. at 525 (alteration in original). Therefore, the abuse of discretion standard also applies even though the trial court did not conduct an evidentiary hearing. See Balducci v. Cige, 240 N.J. 574, 595 (2020); State v. McNeil-Thomas, 238 N.J. 256, 271 (2019). "Expungement of a criminal conviction 'offers a second chance to rehabilitated offenders who have made a commitment to lead law-abiding lives.'" T.O., 244 N.J. at 523 (quoting In re T.B., 236 N.J. 262, 267 (2019)). Expungement in New Jersey is governed by N.J.S.A. 2C:52-1 to -32.1 (the expungement statute).

A petitioner who applies for expungement has the initial burden to satisfy the requirements of the expungement statute by a preponderance of the evidence. T.O., 244 N.J. at 524. "Once [a] petitioner[] satisf[ies] their burden, [it] shifts

to the State to demonstrat[e] by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted." Id. at 525 (quoting In re D.H., 204 N.J. 7, 18 (2010) (citation omitted)) (internal quotation marks omitted).

N.J.S.A. 2C:52-14 sets forth the grounds for denial of expungement. In the present case, the only ground the trial court relied on was subsection (b), which provides that the petition can be denied if "the need for the availability of the records outweighs the desirability of having a person freed from any disabilities as otherwise provided in" the expungement statute. N.J.S.A. 2C:52-14(b). The objector has "the burden of asserting [] grounds" for the objection. Ibid.

There is no dispute—and the trial court found—that petitioner was eligible to have his failure to register as a sex offender—change of address, failure to register as a sex offender—verify address, and harassment convictions expunged. The court acknowledged that petitioner had completed "all

sentencing conditions imposed for [his] most recent conviction for which expungement [was] sought" and was not serving PSL.

## A.

We begin with petitioner's contention that the trial court's denial of expungement amounted to a categorical bar to relief under N.J.S.A. 2C:52-14(b) to all persons subject to Megan's Law registration status. Petitioner asserts that because the State offered no facts upon which the court could conduct an individualized assessment, the court erred by making a generic denial. We are unpersuaded.

First, the court did not deny expungement because petitioner was subject to Megan's Law. It made no mention of such a sweeping categorical bar. Rather, the court detailed petitioner's criminal history, the convictions he sought to expunge, his reasons for doing so, and the consequences of expungement. The court made a qualitative and fact-sensitive assessment of the petition and did not simply dismiss it based on an automatic disqualification.

The trial court also weighed the public interest and policy concerns as compared with the private interest at stake,

> focusing on the Legislature's public policy concerns associated with protecting the public from those who have been convicted of a sexual offense and the mandatory requirement that such offenders fully and

7

completely comply with statutory notification and reporting obligations under Megan's Law.

The court also noted that an "essential consideration consistent with the primary objective of the expungement statute" is whether petitioner had lived a law-abiding life. "In this case," as the trial court noted, "petitioner[] ha[s] not remained offense-free for a period of [fifteen] years after the entry of [his] judgment [] of conviction for the underlying Megan's Law offense."

In evaluating the need to keep petitioner's criminal record available to the State and the court, the trial court found it significant that the conviction sought to be expunged was a violation of petitioner's mandatory reporting obligation under Megan's Law "which is designed to protect the community from sex offenders" by "requiring [] offenders to report their whereabouts." This offense was related to petitioner's non-expungable prior conviction.

Expunging petitioner's most recent conviction would make him eligible for relief from Megan's Law registration requirements. Although this reason for expungement is not per se invalid, it raises concerns and warrants close examination. As the trial court noted, accepting petitioner's reasoning without further examination is tantamount to "turn[ing] a blind eye to the practical implications [that] the granting of expungement relief may have on the public." We are satisfied the court properly held that expungement relief would permit

petitioner alleviation from his Megan's Law obligations "through the proverbial backdoor" as the court noted.

We recognize the important purpose the expungement statute serves. However, it was not created to serve as a trojan horse to slip by the rampart of Megan's Law. Allowing expungement to eviscerate the protections Megan's Law affords to the public would, as the trial court found, "contravene the [Legislature's] express [] intent of [] Megan's Law." Although "presumptively indefinite," Matter of M.H., 475 N.J. Super. 580, 590 (2023) (citing State in Interest of C.K., 233 N.J. 44, 47-48 (2018)), the Legislature carefully prescribed the process and criteria by which a Megan's Law offender can seek to be relieved of its registration and associated public notification requirements. Ibid.; N.J.S.A. 2C:7-2(f). We are aware of no authority in the statutory text or legislative history of either Megan's Law or the expungement statute to support petitioner's attempt to use the expungement remedy to terminate Megan's Law obligations, circumventing the criteria set forth in Megan's Law.

The trial court declined to sanction petitioner's expungement request under N.J.S.A. 2C:52-32, because as the court correctly held, doing so would be tantamount to "conceal[ing] from the State and [the] Megan's Law judge the fact [petitioner] did not comply with Megan's Law requirements." We hold that the

public policy interests behind Megan's Law's registration requirements outweigh the private interest petitioner has in eliminating the disability of this conviction.

The trial court also rejected petitioner's argument that a motion to release the expunged records would provide an adequate safeguard and would neutralize the State's concern that the records would not be available when needed. We discern no error in the court's determination that this option is unworkable, putting the cart before the proverbial horse by requiring a prosecutor to be aware of the expunged records to file a request to unseal and inspect it. Further, relying on petitioner's representation to inform the State and the court of the existence of any expunged files is also, as deemed by the trial court, "impractical[,] [] unlikely," and non-binding.

Petitioner also contends that the State ignored relevant case law interpreting N.J.S.A. 2C:52-14, which prohibits "the creation of per se bars to expungement relief." See State v. XYZ Corp., 119 N.J. 416 (1990); In re J.N.G., 244 N.J. Super. 605 (App. Div. 1990); In re Kollman, 210 N.J. 557 (2012); and T.O., 244 N.J. at 518. At the outset, we disagree with petitioner that the trial court created a per se bar to expungement relief or ignored controlling case law. Moreover, XYZ Corp. and J.N.G. are factually distinguishable. XYZ Corp. involved the corporation's request to expunge its environmental conviction,

where the only need for maintaining the record was to "aid civil litigants who might sue the corporation" in the future. 119 N.J. at 424. In J.N.G., the only reason offered for the need for the expunged records was the serious nature of the underlying convictions. 244 N.J. Super. at 608-09.

The Supreme Court in Kollman addressed a prior version of N.J.S.A. 2C:52-2(a)(2), which allowed for "expungement of certain cases after five years, if expungement is in the public interest." 210 N.J. at 572. The petitioner, however, was not subject to Megan's Law, and therefore, the court was not required to balance the need for the records in the context of an application to terminate petitioner's Megan's Law requirements.

Finally, petitioner argues "the trial court further confused the analysis by injecting the wrong legal standard into the inquiry and impermissibly shifting the 14(b) burden from [the State] to [petitioner]." We discern no such error in the court's analysis.

Contrary to petitioner's argument, the court did not adopt a heightened standard for his expungement application. It applied the appropriate standard, namely, "individuals who apply for expungement have an initial burden to satisfy the requirements of the expungement statute by a preponderance of the evidence," citing D.H., 204 N.J. at 18. The court then correctly stated, "[o]nce

11

petitioner[] satisf[ies] their burden, the burden shifts to the State to demonstrate by a preponderance of the evidence that there is a statutory bar where the petition should not be granted," citing to Ibid. and In re G.R., 395 N.J. Super. 428, 431 (App. Div. 2007). Because petitioner was presumptively eligible to have his convictions expunged, then and only then, did the court shift the burden to the State, as the objector, to identify why the need for the records outweighed the desirability of eliminating the disability by expungement. The record fully supports that the trial court applied the correct legal standard and did not improperly shift the burden to petitioner.

In sum, the trial court, applying the correct legal standard, conducted a particularized analysis to petitioner's expungement application and appropriately determined that the need for the records outweighed the benefit of having his criminal conviction expunged.

## III.

Petitioner also argues the trial court abused its discretion in denying him expungement relief under N.J.S.A. 2C:52-14(b) for several reasons. Petitioner repackages his prior arguments, applies the abuse of discretion standard, contending the court erred in finding that the need for the availability of the

records outweighed the desirability of having petitioner freed from the disability of his conviction.

For the reasons set forth in Section II, we discern no abuse of discretion regarding the court's analysis regarding the need for the records, which is fully supported by the record. The court engaged in a fact-specific analysis, properly balanced the public and private interests at stake, considered the legislative intent of the statutory schemes involved, and appropriately weighed the need for the availability of the records against the desirability of having petitioner's conviction expunged. Accordingly, the trial court properly exercised in discretion in denying petitioner's expungement application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

13