CHIEF JUSTICE RABNER delivered the opinion of the Court.
**265 With the strong support of all three branches of government, the court system has operated a drug court program for more than two decades. Defendants who participate in the program undergo a period of intensive supervision for up to five years. During that time, they are monitored closely by a team of treatment providers, probation officers, substance abuse evaluators, public defenders, prosecutors, and court staff. A trial judge heads the team.
Drug court is designed to rid participants of drug dependency, help them develop skills and get job experience, encourage them to continue their education, and equip them to advance in other ways. At its core, the program tries to keep participants drug free and empower them to lead productive lives.
According to the Administrative Office of the Courts, more than 5400 individuals have successfully completed drug court since 2002, when the program went operational statewide. Administrative Office of *746 the Courts, New Jersey Adult Drug Court Program: New Jersey Statistical Highlights (Aug. 6, 2018), https://www.njcourts.gov/courts/assets/criminal/njstats.pdf. Nine out of ten participants are employed when they graduate. Ibid. Two out of three have a driver's license at graduation. Ibid. More than half have medical benefits. Ibid. And participants must have clean drug tests for one continuous year to be able to graduate. Administrative Office of the Courts, Manual for Operation of Adult Drug Courts in New Jersey (Drug Court Manual ) 42 (July 2002), https://www.njcourts.gov/courts/assets/criminal/dctman.pdf. **266 In 2016, the Legislature expanded opportunities for expungement for successful drug court graduates. They may now apply for the expungement of "all records and information relating to all prior arrests, detentions, convictions, and proceedings." N.J.S.A. 2C:35-14(m)(1). The law does not allow certain serious offenses to be expunged, however. See id. §§ 35-14(m)(2); 52-2(b), (c). In these consolidated appeals, we consider how the expungement statute for drug court graduates applies to individuals convicted of certain third- or fourth-degree offenses related to the sale and distribution of drugs.
We find that the plain language of the new law requires judges to determine whether expungement would be consistent with the public interest. See id. §§ 35-14(m)(2); 52-2(c)(3). In light of the statute's overall approach, which generally favors expungement in a number of ways, and the rigorous nature of the drug court program, we conclude that successful graduates who have committed certain offenses and apply for expungement are entitled to a rebuttable presumption that expungement is consistent with the public interest. Prosecutors, who play an integral role in drug court, become familiar with graduates from years of intensive supervision in the program. Prosecutors can draw on their knowledge of an applicant's character and conduct since conviction, as well as other information, to try to rebut the presumption.
The above approach is consistent with our understanding of the Legislature's intent. It also simplifies the expungement process for drug court graduates to allow them to try to reintegrate into society without the collateral consequences of a criminal record.
Because the Appellate Division applied a different standard, we reverse its judgment and remand the three cases to the trial court for further proceedings.
I.
To better understand the parties' arguments and the rulings of the trial court and Appellate Division, we begin with an overview of relevant parts of the statutory scheme for expungement.
**267 A.
Expungement offers a second chance to rehabilitated offenders who have made a commitment to lead law-abiding lives. As the Legislature explained, the expungement statutes should
be construed with the primary objective of providing relief to the reformed offender who has led a life of rectitude and disassociated himself with unlawful activity, but not to create a system whereby persistent violators of the law or those who associate themselves with continuing criminal activity have a regular means of expunging their police and criminal records.
[ N.J.S.A. 2C:52-32.]
The relevant statutes have evolved over time and have steadily expanded opportunities for expungement. See In re J.S., 223 N.J. 54, 66-71, 121 A.3d 322 (2015) (detailing *747 revisions to the expungement statutes from 1931 forward). For several decades prior to 2010, the general expungement statute, codified in part at N.J.S.A. 2C:52-2(a), made expungement "presumptively available for certain offenses after ten years" provided the applicant had no other criminal convictions. In re Kollman, 210 N.J. 557, 569, 46 A.3d 1247 (2012) ; In re LoBasso, 423 N.J. Super. 475, 488, 33 A.3d 540 (App. Div. 2012).
In 2010, the Legislature amended the law and provided for expungement after five years if the applicant has not been convicted of a crime or an offense since the conviction "and the court finds ... that expungement is in the public interest, giving due consideration to the nature of the offense, and the applicant's character and conduct since conviction." Kollman, 210 N.J. at 570-71, 46 A.3d 1247 (quoting N.J.S.A. 2C:52-2(a)(2) (2010) (amended 2017) ).[1]
**268 Some crimes are not eligible for expungement. Section 2(b) of the general expungement statute lists categories of serious offenses that cannot be expunged, like homicide, kidnapping, aggravated sexual assault, robbery, and certain offenses against minors. N.J.S.A. 2C:52-2(b). Section 2(c), as enacted in 1979, made certain drug crimes -- for sale, distribution, or possession with intent to sell ("drug sale offenses" or "convictions") -- ineligible for expungement except for small quantities of marijuana and hashish. L. 1979, c. 178, § 109 (codified in part at N.J.S.A. 2C:52-2(c)(1) and (2) ) (amended 2017) (25 grams or less of marijuana and 5 grams or less of hashish, respectively).[2]
In 2010, the Legislature added a third exception that allows for the expungement of drug sale offenses when "the crimes involve ... [a]ny controlled dangerous substance provided that the conviction is of the third or fourth degree, where the court finds that expungement is consistent with the public interest." L. 2009, c. 188, § 1 (codified in part at N.J.S.A. 2C:52-2(c)(3) ) (emphasis added). The same finding is required under section 2(a), quoted above. To make the finding under either section, courts are to give "due consideration to the nature of the offense" and to "the [individual's] character and conduct since conviction." N.J.S.A. 2C:52-2(a)(2), -2(c)(3).
Section 2(c)(3) lies at the center of this appeal. For simplicity, we refer to it as the "public-interest finding" or "standard."
In LoBasso, the Appellate Division outlined various factors to consider in deciding whether expungement is in the public interest under section 2(a)(2). 423 N.J. Super. at 491-95, 33 A.3d 540. This **269 Court in Kollman adopted and applied the analysis to section 2(c)(3). 210 N.J. at 574-77, 46 A.3d 1247. We also placed on the applicant the burden of proof to demonstrate that *748 expungement was consistent with the public interest. Id. at 573, 46 A.3d 1247. Among other reasons, we noted that an applicant is "uniquely qualified to demonstrate facts about his or her character and recent conduct. That burden could not fairly be placed on the State initially." Ibid. In addition, to help courts make informed decisions on the public-interest standard, we directed applicants to provide all transcripts of plea and sentencing hearings, along with presentence reports, as part of their petition. Id. at 577, 46 A.3d 1247 (citing LoBasso, 423 N.J. Super. at 483 n.3, 33 A.3d 540 ).
B.
The Legislature passed a broad-ranging law in 2016, commonly known as the drug court expungement statute. L. 2015, c. 261, § 1 (codified in part at N.J.S.A. 2C:35-14(m) ). (We refer to it by its common name, and as the "new law," at various places in this opinion.) The new law allows drug court graduates to apply to expunge their entire criminal record:
The Superior Court may order the expungement of all records and information relating to all prior arrests, detentions, convictions, and proceedings for any offense enumerated in Title 2C of the New Jersey Statutes upon successful discharge from a term of special probation as provided in this section, regardless of whether the person was sentenced to special probation under this section, [ N.J.S.A. 2C:35-14.2 ], or N.J.S.A. 2C:45-1, if the person satisfactorily completed a substance abuse treatment program as ordered by the court and was not convicted of any crime, or adjudged a disorderly person or petty disorderly person, during the term of special probation.
[ N.J.S.A. 2C:35-14(m)(1) (emphasis added).]
The law carves out a number of exceptions. Expungement is not available when the court finds that (1) "the need for the availability of the records outweighs the desirability of having the person freed from any disabilities associated with their availability," or (2) "the person is otherwise ineligible for expungement pursuant to paragraph (2) of this subsection." Ibid.
**270 Paragraph 2, in turn, limits the availability of expungement for drug court graduates as follows:
A person shall not be eligible for expungement under paragraph (1) of this subsection if the records include a conviction for any offense barred from expungement pursuant to subsection b. or c. of N.J.S.A. 2C:52-2. It shall be the obligation of the prosecutor to notify the court of any disqualifying convictions or any other factors related to public safety that should be considered by the court when deciding to grant an expungement under paragraph (1) of this subsection.
[Id. § 35-14(m)(2) (emphases added).]
The meaning of the underscored language is key to this appeal, namely, whether drug court graduates with third- or fourth-degree convictions for drug sale offenses must satisfy the public-interest standard in N.J.S.A. 2C:52-2(c)(3).
The statute provides a streamlined application process. Unlike the general expungement law, drug court graduates are not required to file and serve a verified petition or otherwise follow the requirements of N.J.S.A. 2C:52-7 through -14, and no fees are charged to eligible applicants. N.J.S.A. 2C:35-14(m)(1). The Legislature instead directed that "[a]n expungement under this paragraph shall proceed in accordance with rules and procedures developed by the Supreme Court." Ibid. Pursuant to an Administrative Directive that followed, drug court graduates simply *749 need to "bring [the] matter to the attention of the Drug Court judge prior to graduation." Administrative Directive 02-16: Protocol for "Drug Court Expungements" 1 (May 23, 2016), https://www.njcourts.gov/attorneys/assets/directives/dir_02_16.pdf.
The drug court expungement statute includes a kicker, as well. If a graduate's records are expunged under the law, and he or she "is convicted of any crime" after discharge from drug court, "the full record of arrests and convictions may be restored to public access and no future expungement shall be granted to such person." N.J.S.A. 2C:35-14(m)(4).
II.
The three appeals involve similar facts. T.B., J.N.-T., and R.C., the applicants, had criminal records with multiple prior arrests **271 and convictions. In 2011, two applicants pled guilty to third-degree drug charges, and the third pled guilty to third-degree burglary. All three entered the drug court program and successfully graduated on May 17, 2016. When they completed drug court, all three were employed full-time and had paid any past due obligations for child support as well as fines and costs. All of them applied to expunge their entire criminal record under the new drug court expungement statute, N.J.S.A. 2C:35-14(m).
The trial judge's orders described each applicant's record. T.B.'s included thirteen arrests and convictions since 1989 -- six or seven convictions in municipal court and five in Superior Court. A number involved drug-related offenses.
J.N.-T. had been arrested or convicted thirteen times since 1993. His record included eight convictions for third-degree offenses, two disorderly persons convictions, and several dismissals. His convictions included drug and burglary offenses.
R.C.'s criminal record dated back to 1996 and consisted of five arrests and three convictions. The convictions were in Superior Court, and two related to drug offenses.
The State opposed the applications and argued that the applicants failed to satisfy their burden to establish that expungement was consistent with the public interest. The trial court granted all three applications. In a letter opinion, the court found that the applicants qualified for expungement under the drug court expungement statute. The court rejected the State's claim that the public-interest standard applied to expungements under the new drug court expungement law. In any event, the court noted that in light of the applicants' commitment to sobriety and successful completion of the drug court program, "it is in the public interest to provide them with the means to rejoin the community without the burden of a criminal record." The court therefore entered orders that expunged the criminal records of all three applicants.
The State appealed, and the Appellate Division vacated the expungement orders and remanded the matters to the trial court.
**272 In re T.B., 451 N.J. Super. 391, 408, 168 A.3d 83 (App. Div. 2017). The panel concluded that the plain language of the drug court expungement statute -- which makes drug court graduates ineligible for expungement if their "records include a conviction for any offense barred from expungement pursuant to subsection b. or c. of N.J.S.A. 2C:52-2," N.J.S.A. 2C:35-14(m)(2) -- "expressly imports" the public-interest standard from N.J.S.A. 2C:52-2(c)(3). T.B., 451 N.J. Super. at 400-01, 168 A.3d 83. As a result, the panel held that trial courts may expunge third- and fourth-degree convictions for drug sale offenses under the drug court expungement *750 law "only if 'the court finds that expungement is consistent with the public interest.' " Id. at 404, 168 A.3d 83 (quoting N.J.S.A. 2C:52-2(c)(3) ).
Consistent with Kollman, the panel added that "Drug Court graduates bear the burden to show they satisfy the public interest test." Id. at 405, 168 A.3d 83 (citing Kollman, 210 N.J. at 572-73, 46 A.3d 1247 ). The panel noted that applicants must also present the court with transcripts of plea and sentencing hearings and copies of presentence reports for all third- or fourth-degree drug sale offenses the petitioners seek to expunge. Id. at 406, 168 A.3d 83 (citing Kollman, 210 N.J. at 577, 46 A.3d 1247 ).
Because the trial court did not conduct its public-interest analysis in accordance with Kollman, the panel vacated the expungement orders and remanded the applications for reconsideration. Id. at 405-08, 168 A.3d 83.
We granted T.B.'s, J.N.-T.'s, and R.C.'s petitions for certification, 231 N.J. 400, 176 A.3d 210 (2017) ; 231 N.J. 409, 176 A.3d 216 (2017) ; 231 N.J. 410, 176 A.3d 217 (2017), and stayed the parts of the appellate judgment that vacated the expungement orders, 231 N.J. 411, 176 A.3d 217 (2017) ; 231 N.J. 412 (2017). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU) to participate as amicus curiae.
III.
The applicants argue that the drug court expungement statute does not import the public-interest standard from **273 N.J.S.A. 2C:52-2(c)(3). They rely on the language of the new drug court law, which they claim disallows expungement only for offenses that are absolutely barred under N.J.S.A. 2C:52-2(b) and (c). They also contend that the Legislature intended to remove procedural burdens and create "an efficient, expedient, and presumptive expungement" process as part of drug court -- one that does not require petitioners to obtain transcripts and reports of multiple past convictions to show that expungement is consistent with the public interest.
The applicants also highlight certain policy arguments. They contend that additional hurdles in the drug court expungement process would frustrate the Legislature's goal to relieve graduates of the collateral consequences of a criminal record. The applicants argue in the alternative that, even if a public-interest finding is required, judges can make that finding based on a graduate's record in drug court.
The ACLU advances similar arguments. It likewise contends that the drug court expungement statute does not import the public-interest requirement. Alternatively, the ACLU argues that if an individualized public-interest showing is required, the burden should fall on the State. Finally, the ACLU stresses that the appellate ruling limits opportunities for drug court graduates to be freed of collateral consequences, contrary to the Legislature's sound policy judgment.
The Attorney General argues that the drug court expungement statute clearly imports the public-interest requirement from N.J.S.A. 2C:52-2(c)(3). From a policy perspective, the Attorney General contends that it was rational for the Legislature to require a case-specific public-interest finding for applicants with drug distribution offenses as part of an extended criminal history.
The Attorney General also argues that, consistent with Kollman, it is the applicant -- and not the prosecutor -- who bears the burden to prove by a preponderance of the evidence that expungement is in the public interest. To do so, according to the Attorney General, petitioners must produce past *751 transcripts and reports as **274 described in Kollman. In addition, the Attorney General submits, successful completion of drug court alone does not establish that expungement is in the public interest.
IV.
This appeal poses the following questions: whether the public interest analysis required by N.J.S.A. 2C:52-2(c)(3) applies to expungement applications under N.J.S.A. 2C:35-14(m)(2), and, if so, how that analysis should be conducted. Put more simply, must drug court graduates who have a third- or fourth-degree conviction for a drug sale offense satisfy the public-interest standard when they seek expungement under the new drug court expungement law, and, if they must, how should the standard be applied?
Those narrow, seemingly technical questions can have far-reaching effects for drug court graduates who seek to reintegrate into society. Because older transcripts and reports can be difficult to locate, the meaning of section 14(m)(2) will have a practical effect on a graduate's ability to participate in life's daily activities without the stigma and consequences of a criminal record.
A.
To resolve questions of statutory interpretation, like the ones raised here, we must discern and give effect to the Legislature's intent. State v. S.B., 230 N.J. 62, 67, 165 A.3d 722 (2017). We look first to the statute's plain language, which is typically the best indicator of intent. DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). We derive legislative intent "from a view of the entire statute" and read all provisions "together in light of the general intent of the act." Perez v. Zagami, LLC, 218 N.J. 202, 211, 94 A.3d 869 (2014) (quoting Hubner v. Spring Valley Equestrian Ctr., 203 N.J. 184, 195, 1 A.3d 618 (2010) ).
If the language of the statute is clear, "the inquiry is over." State v. Harper, 229 N.J. 228, 237, 160 A.3d 1281 (2017). We turn to extrinsic evidence, like legislative history, if the statute is **275 ambiguous or its plain language leads to an absurd result contrary to the statutory scheme. Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572, 39 A.3d 177 (2012).
We therefore begin with the relevant words of the statute: successful drug court graduates are not eligible for expungement under the new law "if the records include a conviction for any offense barred from expungement pursuant to subsection b. or c. of N.J.S.A. 2C:52-2." N.J.S.A. 2C:35-14(m)(2) (emphasis added).
The applicants and the ACLU argue that section 14(m)(2) applies only to offenses that are absolutely barred from expungement "by category of offense," and not to individual convictions subject to a public-interest analysis. To be sure, offenses like homicide, aggravated sexual assault, robbery, and the other crimes listed in N.J.S.A. 2C:52-2(b) are barred. The same is true for first- and second-degree drug sale offenses that are automatically barred under N.J.S.A. 2C:52-2(c). Yet third- and fourth-degree offenses for which expungement is not consistent with the public interest are also barred under section 52-2(c). Had the Legislature intended to exclude those cases from the limiting language in section 14(m)(2), it could have said so. But it did not. The plain language of section 14(m)(2) thus includes cases under N.J.S.A. 2C:52-2(c)(3) and calls for a public-interest assessment before third- or fourth-degree drug sale offenses can be expunged.
*752 B.
We next consider how the public-interest analysis should be carried out under the drug court expungement statute. Once again, we start with the statute's text.
The new law favors expungement in a number of ways that go beyond the approach in the general expungement statute. First, the drug court expungement statute allows judges to order the expungement of a person's entire criminal record. N.J.S.A. 2C:35-14(m)(1) ; cf. id. § 52-2.
Second, the new law dispenses with the formal application process imposed by N.J.S.A. 2C:52-7 through -14. Those sections **276 require a verified petition that lists certain specific details, id. § 52-7; an accompanying statement with particular declarations, id. § 52-8; and service of the petition upon various law enforcement and other entities, id. § 52-10. Instead, the Legislature directed that expungement under the new law "shall proceed in accordance with rules and procedures developed by the Supreme Court." Id. § 35-14(m)(1).
In response, the Director of the Administrative Office of the Courts issued Directive 02-16, which simply states, "[t]o be considered for an expungement upon graduation from Drug Court," an applicant "should bring this matter to the attention of the Drug Court judge prior to graduation." Administrative Directive 02-16 at 1. In addition, no fees are charged. Id. at 1-2; N.J.S.A. 2C:35-14(m)(1). For reasons set forth below, applications for drug court expungements should logically proceed before drug court judges, as opposed to other trial judges, because of their greater familiarity with participants in the program.
Third, the law directs that judges "shall grant" expungement unless (1) the need for the availability of the records outweighs the benefits of expungement to the applicant, or (2) the person is otherwise ineligible under section 14(m)(2). N.J.S.A. 2C:35-14(m)(1). In other words, the new law starts with a presumption that expungement shall be granted, subject to certain exceptions.
Fourth, the new law places the following obligation on the State: prosecutors are required "to notify the court of any disqualifying convictions or any other factors related to public safety that should be considered by the court." Id. § 35-14(m)(2). The State thus has the burden to present proof both of objective factors -- any disqualifying convictions -- and of subjective factors that bear on public safety.[3]
**277 Read as a whole, the above features reveal how the new drug court expungement statute tends to favor expungement for successful graduates. With that in mind, we turn to the application of the public-interest standard in cases that arise out of the drug court expungement statute.
As noted earlier, to determine whether expungement is consistent with the public interest, courts are to consider "the nature of the offense and the petitioner's character and conduct since conviction." N.J.S.A. 2C:52-2(c)(3). Kollman, which drew heavily on LoBasso, addressed the kind of information those factors encompass. Kollman, 210 N.J. at 574-76, 46 A.3d 1247. For example, courts may examine not only the details of an offense but also what activities an applicant has engaged in to "limit[ ] the risk of re-offending," such as "whether a petitioner has obtained job training or education, complied with other legal obligations (such as *753 child support and motor vehicle fines), and maintained family and community ties that promote law-abiding behavior, as well as whether the petitioner has severed relationships with persons in the criminal milieu." Id. at 576, 46 A.3d 1247 (quoting LoBasso, 423 N.J. Super. at 491-92, 33 A.3d 540 ).
Kollman placed the burden on the applicant to show that expungement under the general expungement statute is consistent with the public interest. See id. at 573, 46 A.3d 1247. In a typical case, the motion court knows little about an applicant aside from what appears in an expungement petition. In that situation, the applicant "is uniquely qualified to demonstrate facts about his or her character and recent conduct." Ibid. As we noted, "[t]hat burden could not fairly be placed on the State initially." Ibid.
Drug court is different. It focuses directly on many of the concerns described above as part of a rigorous program of supervision. Under N.J.S.A. 2C:35-14, participants are sentenced to a term of special probation, which requires regular court appearances and frequent drug testing. New Jersey Courts, Drug Courts, https://www.njcourts.gov/courts/criminal/drug.html (last visited Jan. 4, 2019).
**278 For a period of up to five years, a specialized team of judges, treatment providers, probation officers, substance abuse evaluators, public defenders, prosecutors, and court staff closely track each defendant's behavior. Drug Court Manual 28-29. Throughout that time, each defendant's progress and achievements are monitored with care -- whether he or she has refrained from drug use, received job training, completed a degree, found work, paid child support and other obligations, gotten a driver's license, and obtained health care coverage, among other rehabilitative steps. And missteps often result in court appearances at which judges can impose sanctions. Id. at 43-46. To graduate, participants must be free of drugs for one continuous year, must be employed (with limited exceptions), must have a regular payment history for court-ordered obligations, and "must be able to demonstrate ... a sober network of support in the community where they reside." Id. at 42.
Based on the program's intensive supervision, coupled with weekly team conferences about active cases and regular court appearances by defendants, judges and other members of the drug court team become quite familiar with each participant. Newly assigned members of the team can gather information from their predecessors and other team members. As a result, judges, prosecutors, and public defenders alike have a basis to assess each defendant's "character and conduct since conviction." N.J.S.A. 2C:52-2(c)(3). It is not only the applicant who can present that information. Cf.Kollman, 210 N.J. at 573, 46 A.3d 1247 (noting that "the petitioner is uniquely qualified" to make the public-interest showing under the general expungement statute).
In light of the rigorous monitoring that is the hallmark of drug court, as well as the new law's overall policy in favor of expungement for successful graduates, we find that participants are entitled to a rebuttable presumption that expungement is consistent with the public interest. As an integral part of the drug court team, prosecutors may draw on their knowledge of an applicant's character and conduct after conviction, as well as other **279 information, to try to rebut the presumption. That approach dovetails with the obligation imposed on prosecutors "to notify the court of ... factors related to public safety that should be considered by the court when *754 deciding to grant an expungement." N.J.S.A. 2C:35-14(m)(2).
In Kollman, we directed applicants to provide copies of plea and sentencing transcripts, as well as presentence reports, to enable courts to evaluate the public-interest standard. 210 N.J. at 577, 46 A.3d 1247. Kollman addressed the general expungement statute, N.J.S.A. 2C:52-2 ; only years later did the Legislature provide for expungement of a drug court graduate's entire criminal record under a different law, id. § 35-14(m). For the same reasons that warrant a rebuttable presumption in those cases, we conclude that successful drug court graduates are not required to provide copies of all relevant transcripts and reports when they ask the drug court judge to expunge their records. If drug court judges, in their discretion, are convinced they need to review the materials, they can work with the parties to determine the most appropriate, effective, and cost-efficient way to obtain them. We anticipate, however, that drug court judges will rarely need dated transcripts and reports after having closely supervised an applicant for years.
V.
T.B.'s, J.N.-T.'s, and R.C.'s applications for expungement under the drug court expungement statute should proceed before the trial court consistent with the above principles. For any prior third- or fourth-degree convictions for drug sale offenses under N.J.S.A. 2C:52-2(c)(3), the applicants are entitled to a presumption that expungement of those offenses is consistent with the public interest. The State may present arguments and evidence to rebut the presumption.
We therefore reverse the judgment of the Appellate Division and remand the appeals to the trial court for further proceedings.
JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.

More recently, the Legislature again revised the general expungement statute. See L. 2017, c. 244, § 1 (codified at N.J.S.A. 2C:52-2 ) (eff. Oct. 1, 2018). It now allows for expungement of multiple crimes and offenses that, among other situations, were listed in a single judgment of conviction or "were interdependent or closely related in circumstances and were committed as part of a sequence of events that took place within a comparatively short period of time." N.J.S.A. 2C:52-2(a). At the same time, the Legislature reduced the time to file for expungement for certain offenses from ten to six years. Id. § 52-2(a)(1). For cases subject to a public-interest finding under subsection 2(a)(2), applicants are now eligible for expungement at least five but less than six years from the date of their most recent conviction.

The Legislature recently amended those quantities and now permits expungement for offenses involving less than one ounce of marijuana and less than five grams of hashish. See L. 2017, c. 244, § 1 (codified at N.J.S.A. 2C:52-2(c)(1) and (2) ) (eff. Oct. 1, 2018).

We note that "factors related to public safety," which prosecutors are obliged to present under section 14(m)(2), partly overlaps with the public-interest standard.