**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-1555-24
                          A-1556-24

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL/JUVENILE
RECORDS OF A.W.[1]

_____

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL/JUVENILE
RECORDS OF C.M.

_____

> APPROVED FOR PUBLICATION
>
> **June 10, 2026**
>
> **APPELLATE DIVISION**

Argued January 13, 2026 – Decided June 10, 2026

Before Judges Sumners, Chase and Augostini.

On appeal from the Superior Court of New Jersey,
Law Division, Camden County, Docket Nos.
XP-23-004960 and XP-24-003785.

Jennifer A. Gisi, Assistant Deputy Public Defender,
argued the cause for appellants A.W. and C.M.

---

[1]  We use initials to protect the confidentiality of the proceedings in accordance with Rule 1:38-3(c)(9) and (11).  Including petitioners' name in this opinion would defeat the purpose of expungement should they refile for relief as their applications were dismissed without prejudice.  See R. 1:38-3(c)(7).

(Jennifer N. Sellitti, Public Defender, attorney; Jennifer A. Gisi and Jonathan Edward Ingram, Assistant Deputy Public Defender, of counsel and on the briefs).

Maura M. Sullivan, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Grace C. MacAulay, Camden County Prosecutor, attorney; Maura M. Sullivan, of counsel and on the briefs).

The Opinion of the court was delivered by

AUGOSTINI, J.A.D.

In these back-to-back appeals consolidated for the purpose of issuing a single-opinion, we are presented for the first time with the question of whether an individual subject to parole supervision for life (PSL), N.J.S.A. 2C:43-6.4, is ineligible to seek an expungement. A.W. and C.M. (collectively petitioners) appeal from January 21, 2025 orders denying their expungement applications. Petitioners are subject to Megan's Law, N.J.S.A. 2C:7-1 to -23, and PSL because of prior convictions for which they are not seeking expungement. Instead, they are seeking to have subsequent convictions expunged while they remain subject to PSL.

On appeal, petitioners assert N.J.S.A. 2C:52-2(a)'s five-year provision requiring completion of court-ordered obligations, including parole, relates only to convictions for which a petitioner seeks expungement. They further

A-1555-24

assert that PSL is not parole because it is a "punitive authorized disposition . . . untethered to a person's carceral sentence." We disagree and affirm the orders. We hold that a petitioner who remains subject to PSL, a form of parole, is ineligible to submit an expungement application until he or she has been released from parole supervision in accordance with N.J.S.A. 2C:43-6.4(c).

I.

A.W.'s Appeal

In 2006, A.W. pled guilty to attempted endangering the welfare of a child (EWC), N.J.S.A. 2C:5-1 and 2C:24-2(a). As a result of this conviction, A.W. was subject to Megan's Law and PSL.[2]

Before the EWC conviction, A.W. had a prior record consisting of the following indictable offenses: (1) 1993 fourth-degree possession of controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(2); and (2) 1997 fourth-degree contempt for violating a domestic violence order, N.J.S.A. 2C:29-9. Additionally, A.W. was convicted of the following disorderly persons and petty disorderly persons offenses: (1) 1998 obstruction of the administration of law or government function, N.J.S.A. 2C:29-1(a); (2) two charges in 2001,

---

[2]  When originally sentenced in 2006, A.W. was placed on Community Supervision for Life (CSL), which we address in section II C of this opinion. On October 23, 2006, A.W.'s judgment of conviction was amended to change his sentence to PSL.

failure to give to police CDS, N.J.S.A. 2C:35-10(c), and obstruction of administration of law or government function; (3) in 2006, prowling for CDS, N.J.S.A. 2C:33-2.1(b); and (4) 2013 contempt for violating a domestic violence order.

On July 15, 2013, A.W. pled guilty to fourth-degree failure to register, N.J.S.A. 2C:7-2(d), specifically, failure to notify law enforcement of a change of address, and to a disorderly persons offense of contempt, N.J.S.A. 2C:29-9(b). He has since remained offense-free.

On December 19, 2023, A.W. filed a petition for expungement under N.J.S.A. 2C:52-2(a), seeking to expunge his 2013 failure to register and contempt convictions. A.W. clarified that he was not seeking a "clean slate" expungement under N.J.S.A. 2C:52-5.3[3] and only sought to expunge his 2013 convictions. The State objected, arguing: (1) A.W.'s prior record made him ineligible for expungement; (2) A.W.'s petition "should be barred" under N.J.S.A. 2C:52-14(b) due to A.W.'s Megan's Law status; and (3) A.W.'s application for regular expungement was not ripe under the five-year provision of N.J.S.A. 2C:52-2(a).

---

[3] N.J.S.A. 2C:52-5.3 provides for a "clean slate" expungement of all offenses "for those who had not committed an offense in ten years," and who are not eligible for an expungement under any other section of the statute. Matter of K.M.G., 477 N.J. Super. 167, 175 (App. Div. 2023).

After further supplemental briefing and oral argument, on January 6, 2025, the trial court denied A.W.'s expungement petition as premature because he remained subject to PSL and, therefore, had not completed the period of parole as required by N.J.S.A. 2C:52-2(a).

On January 15, the trial court held another hearing on A.W.'s matter, explaining that since the January 6 hearing, the court had decided two other expungement matters with similar issues.[4]  On its own motion, the court reconsidered and revised its prior decision as to N.J.S.A. 2C:52-14(b) and Megan's Law.[5]  The court found that it could consider the consequences of expungement on a petitioner's Megan's Law requirements and explained that it could not "turn a blind eye to the practical implications the granting of expungement relief may have on the public."  The court dismissed A.W.'s expungement petition without prejudice.

---

[4]  The two other cases the trial court was referring to were:  In the Matter of Expungement of Crim. Records of C.M., No. A-1556-24, which is part of this appeal, and In the Matter of the Expungement of Crim. Records of P.C., A-1558-24, which is a separate appeal.

[5]  Megan's Law is a series of laws enacted in 1994 to address "[t]he danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children," and requires registration, N.J.S.A. 2C:7-1 to -5, and community notification, N.J.S.A. 2C:7-6 to -10, of those individuals convicted of such offenses.  Doe v. Poritz, 142 N.J. 1, 14-15 (1995).

<u>C.M.'s Appeal</u>

In 2008, C.M. pled guilty to third-degree attempted EWC, N.J.S.A. 2C:5-1 and 2C:24-4(a), and third-degree selling, distributing, renting or exhibiting obscene material to a minor, N.J.S.A. 2C:34-3(b)(1). C.M. was sentenced to concurrent three years' probation on the charges, registration requirements of Megan's Law, and PSL. C.M. had one prior charge of harassment, N.J.S.A. 2C:33-4(a), from 2006, which was dismissed for lack of prosecution.

In 2016, C.M. pled guilty to fourth-degree registration of a sex offender, failure to verify address, N.J.S.A. 2C:7-2(e). C.M. was sentenced to one year probation conditioned on serving 364 days in a county correctional facility. He has since remained offense-free.

On May 22, 2024, C.M. filed a petition for expungement seeking to expunge his prior convictions for attempted EWC, obscenity, harassment, and failure to register. Because of his prior 2008 conviction, C.M. was ineligible for a clean slate expungement and instead filed for a regular expungement. The State objected, and on June 17, C.M. submitted an amended petition seeking to expunge his convictions for failure to register and harassment. The State renewed its objection.

It is undisputed that C.M.'s obligations under PSL and Megan's Law are continuing and are associated with the non-expungable convictions.

On January 10, 2025, the court held a hearing on C.M.'s expungement application along with a related expungement petition.[6] Both applications were denied. Even though more than five years had lapsed since C.M.'s 2016 conviction, because he was currently subject to PSL, the court found that he had not satisfactorily completed parole as required by N.J.S.A. 2C:52-2(a). In reviewing the plain language of the statute, the court concluded that a "petitioner must have satisfactorily completed all probation, parole or other [c]ourt imposed obligations for any criminal conviction" as a "prerequisite for seeking expungement relief." The court further explained that "the expungement eligibility bar [only] exists until PSL release" has been granted by the court in accordance with N.J.S.A. 2C:43-6.4(c).

The court found that PSL is a "special parole status imposed by a sentencing [c]ourt that creates a statutory bar for filing expungement petitions even if imposed for a conviction unrelated to the conviction for which expungement is sought." Therefore, the court determined C.M. ineligible to

---

[6] At the January 10 hearing, the court addressed the related expungement application In the Matter of the Expungement of the Criminal Records of P.C., A-1558-24, which is not part of this opinion.

submit an expungement application "until the [c]ourt imposed PSL is released."

The court then examined whether C.M.'s petition should be denied pursuant to N.J.S.A. 2C:52-14(b), namely, whether the need for the availability of his records outweighs the desirability of an expungement. The court found that expunging C.M.'s records would permit him to apply to be relieved from his lifetime Megan's Law registration and notification requirements. N.J.S.A. 2C:7-1 to -23. Considering the consequences of an expungement on C.M.'s Megan's Law requirements, the court found that "there's a clear need to make the record readily available to the State[7] and the [c]ourt should [] petitioner seek relief from his Megan's Law obligation." The court concluded that the State met its burden under N.J.S.A. 2C:52-14(b) that the need for the availability of petitioner's records outweighs the desirability of having

---

[7] Expunged records are not destroyed but rather are isolated. N.J.S.A. 2C:52-15(a). Even if expunged, the statutes expressly provide for disclosure of information in expunged records under certain circumstances: (1) petitioner seeks employment with the judiciary, law enforcement, or corrections, N.J.S.A. 2C:52-27(c); see also N.J.S.A. 2C:52-17; (2) to the Victim Crimes Compensation Office related to a claim, N.J.S.A. 2C:52-18; (3) to the court for review of applications for admission to diversionary programs, N.J.S.A. 2C:52-20; (4) for use in conjunction with setting bail or pretrial release, presentence report, or sentencing, N.J.S.A. 2C:52-21; (5) in parole decisions by the Parole Board, N.J.S.A. 2C:52-11; (6) by the Department of Corrections in "classification, evaluation and assignment to correctional and penal institutions," N.J.S.A. 2C:52-23. Petitioners' cases do not fall within the ambit of any of the designated uses other than their applications.

petitioner "freed from any disability of [his] convictions." C.M.'s petition was dismissed without prejudice.

On appeal, petitioners contend their expungement applications were not barred by the five-year ripeness provision for two reasons: (1) the five-year provision relates only to convictions and associated penalties and consequences for which petitioners seek expungement and not to prior offenses; and (2) PSL is not parole but is rather a punitive sanction. Additionally, petitioners assert the trial court erred by creating a categorical bar to all persons subjected to Megan's Law registration requirements under N.J.S.A. 2C:52-14(b) and abused its discretion by denying expungement relief pursuant to the same statutory provision.

## II.

### A.

We review questions of statutory construction de novo. Matter of H.D., 241 N.J. 412, 418 (2020) (citing State v. Grate, 220 N.J. 317, 329 (2015)). Our primary goal is to "ascertain the Legislature's intent." In re Expungement of the Crim. Records of E.C., 454 N.J. Super. 48, 53 (App. Div. 2018) (quoting Leggette v. Gov't Emps. Ins. Co., 450 N.J. Super. 261, 265 (App. Div. 2017)). Under well-settled rules of statutory construction, we begin with the plain language of the statute, which is the "best indicator" of the intent of the

Legislature. H.D., 241 N.J. at 418 (quoting State v. Frye, 217 N.J. 566, 575 (2014) (quoting State v. Gandhi, 201 N.J. 161, 176 (2010))). Only if the language of the statute is ambiguous do we look to extrinsic evidence. Ibid. (citing Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)).

> Further, we must construe the statute sensibly and consistent[ly] with the objectives that the Legislature sought to achieve. We will not adopt an interpretation of the statutory language that leads to an absurd result or one that is distinctly at odds with the public-policy objectives of a statutory scheme.
>
> [E.C., 454 N.J. Super. at 53-54 (alteration in original) (quoting Leggette, 450 N.J. Super. at 265) (remaining citations and internal quotation marks omitted).]

In this appeal, the public policy interests of two statutory schemes collide: expungement and PSL, a component of the Violent Predator Incapacitation Act, which is also a part of the series of laws referred to collectively as Megan's Law. State v. Perez, 220 N.J. 423, 437 (2015) (citing State v. Schubert, 212 N.J. 295, 305 (2012)). On one hand, the expungement statutory scheme aims to expand opportunity for offenders by "offer[ing] them a second chance . . . to lead law-abiding li[v]es" and facilitate reentry into the community. In re Petition for Expungement of Crim. Records Belonging to T.O., 244 N.J. 514, 523 (2021) (quoting In re T.B., 236 N.J. 262, 267 (2019)). PSL, on the other hand, aims to protect members of the community from "recidivism by defendants convicted of serious sexual offenses" by

10

maintaining supervision and restricting an offender's liberties. Schubert, 212 N.J. at 308 (quoting Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181, 184 (App. Div. 2004)).

We begin with an overview of these distinct statutory schemes.

B.

Expungement

Expungement in New Jersey "is provided by statute, N.J.S.A. 2C:52-1 to -31.1,

> with the primary objective of providing relief to the reformed offender who has led a life of rectitude and disassociated himself with unlawful activity, but not to create a system whereby persistent violators of the law or those who associate themselves with continuing criminal activity have a regular means of expunging their police and criminal records."

> [T.O., 244 N.J. at 523 (quoting N.J.S.A. 2C:52-32).]

The statute has been amended repeatedly "over time to expand opportunities for expungement." Id. at 526 (citing In re J.S., 223 N.J. 54, 66-71 (2015)). There are various pathways to expungement, and "eligibility for expungement depends on the record to be expunged: indictable offenses, N.J.S.A. 2C:52-2; disorderly and petty disorderly persons offenses, N.J.S.A. 2C:52-3; local ordinances, N.J.S.A. 2C:52-4; and juvenile matters, N.J.S.A. 2C:52-4.1." Matter of K.M.G., 477 N.J. Super. 167, 174 (App. Div. 2023). A petitioner

11

has the initial burden "to satisfy the requirements of the expungement statute by a preponderance of the evidence." T.O., 244 N.J. at 524 (citing In re D.H., 204 N.J. 7, 18 (2010)). If satisfied, "the burden [then] shifts to the State to demonstrate by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted." Ibid. (citations and internal quotation marks omitted).

Both petitioners sought regular expungements for indictable offenses under N.J.S.A. 2C:52-2(a). The applicable portions of N.J.S.A. 2C:52-2(a) provide:

> the person has been convicted of one crime and no more than three disorderly persons or petty disorderly persons offenses under the laws of this State, and does not otherwise have any subsequent conviction for another crime, or any subsequent conviction for another disorderly persons or petty disorderly persons offense such that the total number of convictions for disorderly persons and petty disorderly persons offenses would exceed three, whether any such crime or offense conviction was within this State or any other jurisdiction. Subject to the provision of subsection e. of [N.J.S.A. 2C:52-14] requiring denial of an expungement petition when a person has had a previous criminal conviction expunged, a prior conviction for another crime, disorderly persons offense, or petty disorderly persons offense shall not bar presenting an application seeking expungement relief for the one criminal conviction and no more than three convictions for disorderly persons or petty disorderly persons offenses that are the subject of the application;

. . . .

The person, if eligible, may present the expungement application after the expiration of a period of five years from the date of the person's most recent conviction, payment of any court-ordered financial assessment, satisfactory completion of probation or parole, or release from incarceration, whichever is later. The term 'court-ordered financial assessment' as used herein and throughout this section means and includes any fine, fee, penalty, restitution, and other form of financial assessment imposed by the court as part of the sentence for the conviction or convictions that are the subject of the application, for which payment of restitution takes precedence in accordance with chapter 46 of Title 2C of the New Jersey Statutes. The person shall submit the expungement application to the trial [c]ourt in the county in which the person resides or a county in which one or more of the person's convictions were adjudged, which includes a duly verified petition as provided in [N.J.S.A. 2C:52-7] praying that the conviction, or convictions if applicable, and all records and information pertaining thereto be expunged. The petition appended to an application shall comply with the requirements set forth in [N.J.S.A. 2C:52-1 to -31.]

[(Emphasis added).]

Under N.J.S.A. 2C:52-14, an expungement petition may be denied when:

a. Any statutory prerequisite, including any provision of this chapter, is not fulfilled or there is any other statutory basis for denying relief.

b. The need for the availability of the records outweighs the desirability of having a person freed from any disabilities as otherwise provided in this chapter. An application may be denied under this

13

A-1555-24

subsection only following objection of a party given notice pursuant to [N.J.S.A. 2C:52-10] and the burden of asserting such grounds shall be on the objector.

C.

PSL

In 2003, the Legislature revised N.J.S.A. 2C:43-6.4, replacing CSL with PSL.  State v. Hester, 233 N.J. 381, 386-87 (2018) (citing L. 2003, c. 267, § 1 (2003 Amendment)).  This amendment did not merely give CSL "a new name," Id. at 387, but instead, clarified:

> that the lifetime community supervision required by this section is parole supervision, which commences upon [] defendant's actual release from incarceration, and is to be supervised like any other period of parole. A person serving a special sentence of parole supervision for life pursuant to this section would be subject to the standard provisions and conditions of parole, as determined by the State Parole Board.
>
> [Sponsor's Statement to S. 2659 (June 12, 2003) (emphasis added); see also Model Jury Charges (Criminal), "Violation of a Condition of Parole Supervision for Life:  Fourth Degree (N.J.S.A. 2C:43-6.4(d))" (approved Jan. 13, 2014).]

The statute now provides a person serving PSL:

> shall remain in the legal custody of the Commissioner of Corrections, shall be supervised by the Division of Parole of the State Parole Board, shall be subject to the provisions and conditions set forth in subsection c. of [N.J.S.A. 30:4-123.51(b) and N.J.S.A. 30:4-123.59 to .63, .65] . . . , and shall be subject to conditions

14

appropriate to protect the public and foster rehabilitation.

[N.J.S.A. 2C:43-6.4(b).]

PSL, as we have noted, is a "special sentence of parole supervision for life," imposed on a person convicted of certain sexual offenses enumerated in N.J.S.A. 2C:43-6.4(a). "[P]SL is a component of the Violent Predator Incapacitation Act, which is also a component of a series of laws enacted in 1994, commonly referred to as 'Megan's Law.'" Perez, 220 N.J. at 436-37 (quoting Schubert, 212 N.J. at 305). It is "designed to protect the public from recidivism by sexual offenders," id. at 437 (citations omitted), and to this end, it subjects a parolee to certain restrictions for life. H.R. v. New Jersey State Parole Bd., 242 N.J. 271, 291 (2020). PSL's "restrictions . . . monitor every aspect of the daily life of an individual convicted of a qualifying sexual offense and expose that individual to parole revocation and incarceration on the violation of one, some, or all conditions." H.D., 241 N.J. at 421 (quoting Hester, 233 N.J. at 441).

Our jurisprudence recognizes "that the State has a significant interest in ensuring adherence to the restrictive conditions imposed pursuant to PSL . . . 'to protect the public from recidivism by defendants convicted of serious sexual offenses.'" Ibid. (quoting Jamgochian v. State Parole Bd., 196 N.J. 222, 237-38 (2008)). "[D]efendants subject to PSL are supervised by the Parole

15                                                                    A-1555-24

Board and face a variety of conditions beyond those imposed on non-sex-offender parolees." Perez, 220 N.J. at 437. "PSL is punitive rather than remedial at its core." Schubert, 212 N.J. at 305.

Under N.J.S.A. 2C:43-6.4(c), a person subject to PSL may petition for release. A court may grant the petition,

> upon proof by clear and convincing evidence the petitioner has not committed a crime for [fifteen] years since the last conviction or release from incarceration, which ever is later, and that the person is not likely to pose a threat to the safety of others if released from parole supervision.
>
> [N.J.S.A. 2C:43-6.4(c).]

"[O]nly by court order," may a person be released from PSL. Id.

"A violation of a PSL condition may be prosecuted as a third-degree crime, N.J.S.A. 2C:43-6.4(d), or treated as a parole violation, N.J.S.A. 2C:43-6.4(b)." K.G. v. New Jersey State Parole Bd., 458 N.J. Super. 1, 15 (App. Div. 2019). Furthermore, a defendant on PSL who commits certain designated offenses is subject to a mandatory extended term, N.J.S.A. 2C:43-6.4(e), and "must serve the entirety of his or her sentence and then resume [] PSL status." Perez, 220 N.J. at 442.

A-1555-24

III.

A.

We begin first with the threshold question of whether the term "parole" encompasses PSL. Petitioners contend that "even if the five-year provision applies to penalties imposed pursuant to convictions not the subject of the application," the trial court erred by finding PSL is "parole." They argue that PSL and parole are distinct statutory schemes, and for purposes of determining whether a petitioner has completed parole, PSL is not included within that term. We disagree with that assertion for the following reasons.

"Parole and probation are punishments imposed for the commission of a crime." Hester, 233 N.J. at 393 (citing State v. Riley, 219 N.J. 260, 288 (2014)). PSL is an "indefinite form[] of parole" and properly characterized as "punishment." Ibid. (quoting Riley, 219 N.J. at 288-89) (last citation omitted). N.J.S.A. 2C:43-6.4(b) unequivocally states that "the custodial term imposed upon[] defendant related to the special sentence of parole supervision for life shall be deemed to be a term of life imprisonment."

PSL starts at the time a person's confinement in prison ends. N.J.S.A. 2C:43-6.4(b). Moreover, a person subject to PSL is in custody of the Department of Corrections and under the supervision of the Parole Board. Hester, 133 N.J. at 388. "Supervision [of an individual on PSL] is by the

17                                                                    A-1555-24

parole authorities . . . ." Cannel, New Jersey Criminal Code Annotated, cmt. 1 on N.J.S.A. 2C:43-6.4 (2026). Moreover, an individual serving PSL who commits an enumerated offense in subsection e. "shall be sentenced to an extended term of imprisonment as set forth in N.J.S.[A.] 2C:43-7 . . . which term shall . . . be served in its entirety prior to resumption of . . . [PSL]." N.J.S.A. 2C:43-6.4(e). As with parole in general, PSL is "punitive rather than remedial at its core." Schubert, 212 N.J. at 308.

N.J.S.A. 2C:43-6.4(c) allows for termination of PSL "only upon proof by clear and convincing evidence that the person has not committed a crime for [fifteen] years since the last conviction or release from incarceration . . . and that the person is not likely to pose a threat to the safety of others if released from [PSL]." We recognize that A.W. and C.M. were ineligible to file a petition for termination because neither were offense-free for fifteen years since their last conviction or their release from incarceration at the time they filed their expungement petitions.

However, petitioners were also on parole when they filed their applications because, based on PSL's statutory scheme, PSL—a special form of parole—is parole nonetheless. We hold that petitioners were ineligible to file expungement petitions while they remained on parole even though it had been

"imposed for a conviction unrelated to the conviction for which expungement was sought."

IV.

Now, the question we must address is whether the completion of parole, including PSL, pertains only to the conviction for which expungement is sought. Based on our de novo review, the answer is no.

We first consider the plain language of the statute and its use of the term, "parole." cf. Ardan v. Board of Review, 231 N.J. 589, 604-05 (2018) (quoting In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 542 (2016) (internal citation omitted)). Pertinent to this appeal, the five-year provision begins to run from certain triggering events which include the petitioner's "most recent conviction . . . or satisfactory completion of probation or parole . . . whichever is later." N.J.S.A. 2C:52-2(a). The trial court found that the plain language of the statute required "finality of all such obligations," and not only those associated with the conviction sought to be expunged.

This interpretation is consistent with the overall intent of the expungement statute; namely, to "provid[e] relief to the reformed offender," N.J.S.A. 2C:52-32, who has "made a commitment to lead a law-abiding li[fe]." T.O., 244 N.J. at 523 (quoting T.B., 236 N.J. at 267). Moreover, construing the statute in this manner is consistent with the terms of the "original laudable

19

purpose, to wit, elimination of the collateral consequences imposed upon otherwise law-abiding citizens who have had a minor brush with the criminal justice system." In re T.P.D., 314 N.J. Super. 643, 648 (Law Div. 1997), aff'd 314 N.J. Super. 535 (App. Div. 1998) (citation omitted). To lead a law-abiding life, as the trial court explained, "means to fulfill all obligations of court-imposed sentences" and not only those associated with or arising from the current expungable conviction. An individual subject to ongoing parole supervision as part of a penal sanction has not yet completed his or her penal sanction or demonstrated such a law-abiding life.

In 2019, the expungement statute was amended so that an individual with prior convictions is not barred from applying for an expungement. N.J.S.A. 2C:52-2(a) provides:

> Subject to the provision of subsection e. of N.J.S.[A.] 2C:52-14 requiring denial of an expungement petition when a person has had a previous criminal conviction expunged, a prior conviction for another crime shall not bar presenting an application seeking expungement relief for the criminal conviction that is the subject of the application . . . .

In amending the statute, the Legislature was aware of petitioners who had prior convictions for which they were not seeking expungement, or which were ineligible to be expunged. "There is a long-standing canon of statutory construction that presumes that the Legislature is knowledgeable regarding the

judicial interpretation of its enactments." In re Kollman, 210 N.J. 557, 572 (2012) (quoting Coyle v. Bd. of Chosen Freeholders, 170 N.J. 260, 267 (2002) (citation omitted)). Nonetheless, the plain language of the statute did not expressly limit completion of probation or parole to the "most recent conviction." N.J.S.A. 2C:52-2(a).

In terms of indictable offenses under N.J.S.A. 2C:52-2(a), the Legislature purposefully chose to qualify "conviction" with the words, "most recent," while no such qualifier was used when referring to satisfaction of "probation or parole." If "the Legislature has carefully employed a term in one place yet excluded it in another, it should not be implied where excluded." State v. Cooper, 256 N.J. 593, 605 (2024) (citation omitted).

We see further support for this interpretation as the Legislature expressly defined the term "court-ordered financial assessment" to "mean[] and include[] any fine, fee, penalty, restitution, and other form of financial assessment imposed by the court as part of the sentence for the conviction or convictions that are the subject of the application" N.J.S.A. 2C:52-2(a). We agree with the State that had the Legislature intended to limit the completion of probation or parole to the convictions subject to the expungement application, it would have expressly stated so. "[C]ourts should not add language to section (x) that the Legislature chose to include in section (y) but left out of (x). The reason is

simple:  [t]he Legislature knows how to write [a] . . . statute."  <u>Matter of R.H.</u>, 258 N.J. 1, 12 (2024) (quoting <u>Plainfield Rescue Squad</u>, 210 N.J. at 593) (internal quotation marks omitted).

Under N.J.S.A. 2C:52-14(a), a petitioner's expungement petition may be denied when "any statutory prerequisite, including any provision of this chapter, is not fulfilled."  In other words, a person may be ineligible for an expungement at the time of the application if the petitioner remains on PSL. In this case, the petitioners are not eligible for an expungement because at the time of their applications, they were on parole, i.e., PSL.  To suggest otherwise, would eviscerate the "punitive" sanction petitioners acknowledge they remained subject to.  Indeed, had the Legislature intended to excuse persons on PSL from the five-year requirement, it would have expressly stated so.  Based on our de novo review, we hold that the five-year provision requiring completion of probation or parole applies to the person and not to any particular conviction.

V.

Petitioners contend the trial court further erred by finding under N.J.S.A. 2C:52-14(b) that the State had "met [its] burden by a preponderance of the evidence, [that] the need for the availability of the records . . . outweigh[ed] the desirability of having petitioners freed from any disabilities of their

A-1555-24

convictions."  They argue that this finding amounts to a "categorical bar to expungement relief on all persons subject to Megan's Law registration status."

If a petitioner satisfies the "requirements of the expungement statute by a preponderance of the evidence," only then does the burden shift to the State to "demonstrat[e] by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted."  T.O., 244 N.J. at 524-25 (quoting D.H., 204 N.J. at 18) (internal quotation marks omitted).  In these cases, although petitioners' indictable offenses presumptively qualified to be expunged under N.J.S.A. 2C:52-2(a), as explained in sections II and III, neither petitioner satisfied all of the requirements of the expungement statute because they remained on PSL and have not successfully completed parole. D.H., 204 N.J. at 18.  Therefore, the burden should not have shifted to the State to "demonstrate[] by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted."  Id. at 15 (quoting In re G.R., 395 N.J. Super. 428, 431 (App. Div. 2007)).

Nonetheless, under N.J.S.A. 2C:52-14(a), denial is required under these circumstances because neither petitioner can demonstrate that they fulfilled the "statutory prerequisite" under N.J.S.A. 2C:52-2(a) of the five-year expiration from the date of their "satisfactory completion of probation or parole." Because this statutory prerequisite has not been satisfied, we need not go

23

further and analyze whether the trial court erred in its qualitative assessment of "[t]he need for the availability of the records" against "the desirability of having a person freed from any disabilities." N.J.S.A. 2C:52-14(b).

We also need not reach petitioners' remaining contention that the court abused its discretion by denying expungement relief under N.J.S.A. 2C:52-14(b).

In sum, we affirm the trial court's denial of petitioners' expungement applications. We hold that the five-year ripeness provision of N.J.S.A. 2C:52-2(a), permitting an expungement application only "after the expiration of a period of five years from the person's . . . satisfactory completion of probation or parole" includes completion of PSL as a form of parole and is not limited to the offense for which expungement is sought. In other words, because N.J.S.A. 2C:52-2(a) allows for an expungement application only after five years from a petitioner's completion of parole, and PSL is a form of parole, we hold that completion of or termination from PSL is a prerequisite to filing an expungement application under N.J.S.A. 2C:52-2(a) regardless of whether it is associated with the offense for which expungement is sought.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division